# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | | |
|---|---|---|
| IN RE PRE-FILLED PROPANE TANK ANTITRUST LITIGATION | ) ) ) | MDL NO. 2567 |
| ALL ACTIONS | ) | MASTER CASE NO. 14-02567-MD-W-GAF |

## MOTION FOR APPOINTMENT OF LEADERSHIP STRUCTURE
## AND SUGGESTIONS IN SUPPORT

Hagens Berman Sobol Shapiro LLP and Stueve Siegel Hanson LLP were lead counsel in the 2009 MDL involving similar facts, *In Re Pre-Filled Propane Tank Marketing and Sales Practices Litigation*, and filed the first nationwide class action in the country that led to this MDL. On October 16, 2014, the Judicial Panel on Multidistrict Litigation transferred four cases to this Court for coordinated or consolidated pretrial proceedings. (10/16/14 Order, Doc. 1). There are also thirty-two potential tag-along actions. (*Id*.; JPML/MDL 2567, Doc. 131), twenty of which were transferred to this Court on October 31, 2014. (JPML/MDL 2567, Doc. 137). The centralized actions, as stated in the original complaint, allege that the AmeriGas Defendants ("AmeriGas Cylinder Exchange") and the Ferrellgas Defendants ("Blue Rhino"), the two leading distributors of propane exchange tanks, conspired to fix the fill levels of propane exchange tanks. The transferred actions and potential tag-alongs include cases brought by both direct and indirect purchasers of propane exchange tanks.

Following the transfer order, this Court ordered the parties to submit their "selections of lead counsel, members of 'committees of counsel,' etc." (10/22/14 Order, Doc. 2). Due to the different claims and interests of direct and indirect purchasers, Plaintiffs in *Ortiz, et. al. v. Ferrellgas Partners, L.P., et. al.*, Case No. 2:14-cv-02257 (D. Kan. May 30, 2014) ("*Ortiz* Plaintiffs") respectfully propose a leadership structure, widely supported by the remaining direct

1

and indirect plaintiffs[1] with separate interim lead and liaison counsel for direct and indirect purchasers. The *Ortiz* Plaintiffs, based on their leadership experience in the previous MDL, do not believe an executive committee is necessary or helpful. *Ortiz* Plaintiffs propose that Robert Carey of Hagens Berman Sobol Shapiro LLP and Norman E. Siegel of Stueve Siegel Hanson LLP be appointed interim co-lead counsel for indirect purchasers under Federal Rule of Civil Procedure 23(g). To aid the Court with scheduling and other procedural issues, *Ortiz* Plaintiffs further request that Mr. Siegel also be appointed Liaison Counsel for the indirect purchasers.

*Ortiz* Plaintiffs take no position on who should be appointed lead counsel for direct purchasers. *Ortiz* counsel have extensive experience successfully working with many of the direct purchaser counsel, including Hausfeld LLP and Cohen Milstein Sellers & Toll PLLC. Hagens Berman and Stueve Siegel will work efficiently and collaboratively with all Plaintiffs' counsel in the best interests of the indirect purchaser plaintiffs and proposed classes, as is their consistent practice in large MDL proceedings.[2]

Mr. Carey, Mr. Siegel and their respective firms have extensive experience prosecuting complex and consumer class actions. They have a history of working cooperatively with other counsel and with each other. Their firms also have the resources required for this type of litigation, and have demonstrated success in the field of antitrust class actions. Hagens Berman and Stueve Siegel are familiar with the Defendants in this matter and many of the issues raised by the complaints, because both firms served in leadership roles in the previous proceeding

---

[1] Counsel in *Ortiz* have communicated with most—but not all—counsel that have filed actions and there is consensus there should be—as is typically the case—separate co-lead counsel representing these respective groups. (Ex. 1, 11/5/14 Declaration of Robert Carey at ¶ 9).

[2] In the Court's previous MDL involving pre-filled propane tanks, Hagens Berman and Stueve Siegel worked cooperatively with more than a dozen other plaintiffs' counsel, and are committed to the same approach here. *See* Carey Decl., ¶ 5; Ex. 2, 11/5/14 Declaration of Norman E. Siegel at ¶ 5.

before this Court (MDL 2086) involving Defendants' alleged misrepresentations that pre-filled propane tanks were "full". While this case focuses on the continued use of a fixed price, Plaintiffs' counsel's experience with the previous consumer fraud allegations makes them uniquely qualified to be interim class counsel and to efficiently manage pretrial proceedings on behalf of the indirect purchaser Plaintiffs. *See* Siegel Decl., ¶ 5. Further, Stueve Siegel's home office is located in Kansas City and its lawyers have extensive experience before this Court. Plaintiffs believe that the proposed leadership structure and selection of counsel will best represent the interests of putative class members and will be more efficient than a more elaborate structure.

## I. **PLAINTIFFS' ALLEGATIONS**

In April 2008, Blue Rhino, facing a spike in propane exchange tank input costs, including the price of propane, decided to reduce the fill level of its tanks from seventeen pounds to fifteen pounds without a corresponding price reduction. Blue Rhino understood that independently reducing the fill level in its exchange tanks risked putting the company at a competitive disadvantage if its principal competitor, AmeriGas, did not also reduce fill levels. Blue Rhino was particularly concerned about its competitive standing with its second largest customer, Walmart, because Walmart purchased tanks from both Blue Rhino and AmeriGas. Therefore, Blue Rhino planned to let AmeriGas know about the fill reduction "well in advance." Blue Rhino followed through with its plan to inform AmeriGas. The two companies engaged in a series of communications, and by the end of June 2008, Blue Rhino and AmeriGas agreed on the fill reduction. *See Ortiz* Complaint at ¶¶ 37-40, 46-55.

Walmart strongly resisted the fill reduction. Neither AmeriGas nor Blue Rhino could unilaterally initiate the fill reduction and risk losing Walmart's business. In the summer of 2008, the two companies secretly colluded to persuade Walmart to accept the fill reduction. AmeriGas

and Blue Rhino presented a united front to Walmart and represented the fill reduction as an industry standard.  Their concerted efforts were successful, and as a result, purchasers paid more than they otherwise would have for propane contained in propane exchange tanks.  AmeriGas and Blue Rhino's conduct had the purpose and effect of restricting or eliminating competition in the sale of propane exchange tanks.  Absent their unlawful agreement, AmeriGas and Blue Rhino would not have been able to reduce the fill levels of their tanks to fifteen pounds.  *See Ortiz* Complaint at ¶¶ 40, 44-45, 58-77, 79.

While the Defendants apparently made efforts to change their disclosures to consumers (*i.e.*, the content of the labeling on tanks) in response to the previous pre-filled propane MDL and class settlements, they have continued to sell their tanks at artificially boosted prices throughout the United States.  The indirect Plaintiffs thus seek to vindicate the rights of consumers of propane exchange tanks who purchased these tanks after the previous settlements.

## II. LEGAL ARGUMENT

### A. The Standards for Appointing Class Counsel

In coordinating this litigation, the Court indicated it will designate counsel to act on behalf of putative class members.  Recognizing "the reality that the selection and activity of class counsel are often critically important to the successful handling of a class action," the federal rules set forth criteria to govern the Court's selection of counsel best suited to represent the class.  Adv. Comm. Notes to Fed. R. Civ. P. 23(g), 2003 Amendment.  In addition to considering any other matter relevant to counsel's ability to represent the class's interests, the Court must consider: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class.  Fed. R. Civ. P. 23(g)(A)-(B); *see also*

*Crocker v. KV Pharmaceutical Co.*, 2009 WL 1297684, at *1 (E.D. Mo. 2009) (same criteria apply to selection of interim class counsel); Adv. Comm. Notes to Fed. R. Civ. P. 23(g)(2)(B), 2003 Amendment (same criteria used for selecting amongst multiple adequate applicants). Applying this criteria here demonstrates that the proposed structure and appointments are appropriate.

### B. Robert Carey of Hagens Berman and Norman Siegel of Stueve Siegel Should Be Appointed as Co-Lead Counsel for Indirect Purchasers

All of the relevant considerations under Rule 23(g) favor appointment of Hagens Berman and Stueve Siegel as lead counsel for the indirect purchaser Plaintiffs. The proposed interim class counsel spent significant time and effort investigating and preparing to file the *Ortiz* case. Carey Decl., ¶ 6; Siegel Decl., ¶ 6. The *Ortiz* action, which seeks relief on behalf of indirect purchasers of propane tanks, was the first case filed in this MDL. The later-filed cases, by both direct and indirect purchasers, largely restate the allegations from *Ortiz*. Thus, the first consideration under Rule 23(g), the work counsel have performed identifying and investigating claims in this action, weighs in favor of appointing this proposed leadership for the putative indirect purchaser classes. Fed. R. Civ. P. 23(g)(1)(A)(i).

Importantly, both Hagens Berman and Stueve Siegel held leadership positions in *In Re Pre-Filled Propane Tank Marketing and Sales Practices Litigation*, a 2009 MDL handled by this Court arising out of many of the same facts. In the 2009 MDL, Hagens Berman and Stueve Siegel were appointed to lead the case, and the firms played key roles in prosecuting and ultimately settling claims by indirect purchasers who bought AmeriGas propane exchange tanks between June 15, 2005, and November 30, 2009 and/or Blue Rhino propane exchange tanks between June 15, 2005, and October 13, 2011. These firms were consistently able to resolve many discovery and scheduling issues through good faith discussions with defense counsel

(many of whom have appeared in this current MDL) with minimal need for Court intervention. This experience will be invaluable in the timely and efficient handling of this proceeding. *See* Fed. R. Civ. P. 23(g)(1)(A)(ii), (iii) (the Court considers counsel's experience handling class actions, the types of claims asserted, and knowledge of the applicable law).

As set forth in detail below, and in the attached declarations, Mr. Carey, Mr. Siegel, and their firms have extensive experience handling complex commercial litigation, class actions and MDL cases and possess significant knowledge of applicable law. *See* Fed. R. Civ. P. 23(g)(1)(A)(ii), (iii). And both firms will devote their substantial resources to representing the putative classes. Fed. R. Civ. P. 23(g)(1)(A)(iv) (the Court must consider the resources counsel will commit to representing the class).

### i. Hagens Berman Sobol Shapiro

Hagens Berman specializes in the litigation of complex class actions and MDLs on behalf of plaintiffs throughout the country. Hagens Berman has been appointed lead or co-lead counsel in many of the largest antitrust, consumer fraud, product liability, and securities cases in history. The firm abides by a rule developed from years of leading complex class actions: vigorous and efficient prosecution with a nimble leadership team, clear lines of responsibility, and a commitment to "live and breathe" a case. Hagens Berman's leadership has achieved substantial, often unprecedented, results for class members. Carey Decl., ¶ 2. The following are just a few examples, with an emphasis on antitrust disputes:

- *In re Visa Check/MasterMoney Antitrust Litigation*, No. 96-CV-5238 (E.D.N.Y.). Hagens Berman acted as plaintiffs' co-lead counsel in this antitrust class action against Visa and MasterCard, challenging an aspect of their "Honor All Cards" rule. Shortly after trial began in the case, Hagens Berman, which was on the trial team, helped secure a class settlement of approximately $3.05 billion, and injunctive

6

relief valued at approximately $20 billion. At the time of the settlement, this was the largest antitrust settlement in history.

- *In re Elec. Books Antitrust Litig.*, 11-md-2293 DLC (S.D.N.Y.). The firm pioneered this litigation as lead counsel against Apple and the largest brick-and-mortar publishers for antitrust violations. Hagens Berman worked in novel partnership with the Department of Justice and 33 State Attorneys General, representing purchasers of e-books in 19 states and four U.S. territories. Conditioned on the Second Circuit's handling of Apple's appeal, the class may receive up to $560 million to resolve price-fixing allegations, on single damages of $270 million.

- *In re DRAM Antitrust Litigation*, No. 02-1486 (N.D. Cal.). Hagens Berman acted as plaintiffs' co-lead counsel in this price fixing class action against the leading manufacturers of the electronics component dynamic random access memory (DRAM). This litigation settled before trial for approximately $345 million.

- *In re Optical Disk Drives Products Antitrust Litigation*, 3:10-MD-2143 (N.D. Cal.). Hagens Berman is sole plaintiffs' lead counsel in this indirect purchaser class action alleging that the manufacturers of optical disk drives used in computers and other electronic devices, conspired to raise the prices of such drives, and related products. The litigation is currently in discovery.

- *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 8:10ML2151 JVS, (C.D. Cal.). As co-lead counsel for the economic loss classes in this successful, complex MDL, the firm challenged a defect causing dozens of models spanning an 8-year period to undergo sudden, unintended acceleration. The resulting $1.6 billion settlement included $500 million in cash payments to class

7

members, many of whom received checks for thousands of dollars; installation of a safety-enhancing brake override system on millions of vehicles; and a program that substantially extended warranties for millions of consumers. To the firm's knowledge this was the largest automobile class settlement in U.S. history. *See* Carey Decl., ¶¶ 2-3.

Hagens Berman's record demonstrates that it commits national resources (65+ firm lawyers and dozens of contract attorneys) in complex multi-state class actions such as this to prosecute cases in a timely manner. Because Hagens Berman is prudent with resources, it is fortunate to have the ability to fund litigation costs over many years of litigation and trial, often alone. Hagens Berman does not run from cases when they become difficult; instead, the firm re-doubles its efforts to great success. Carey Decl., ¶ 8; *see* Fed. R. Civ. P. 23(g)(1)(A)(iv).

Robert Carey, a partner, is a member of Hagens Berman's executive committee, and has managed numerous cases in his 27-year career, including service as Arizona's Chief Deputy Attorney General, where he managed all antitrust cases and led the team that obtained a $4 billion divestiture and a landmark $165 million antitrust settlement for the State. Carey Decl., ¶ 4. Mr. Carey has also worked as a judge pro tem in Maricopa County's superior court, and as an adjunct professor at Arizona State University's Sandra Day O'Connor College of Law, where he teaches class actions. Most recently, he has acted as class counsel for a large-scale nationwide class action currently being settled for $400 million against Hyundai and Kia for overstating their fuel economy ratings. Carey Decl., ¶ 3.

### ii. Stueve Siegel Hanson LLP

Stueve Siegel Hanson is a 30 lawyer firm with a nationwide practice that focuses on complex commercial and class litigation and trials involving of business torts, antitrust, consumer fraud, and securities violations. The firm has recovered hundreds of millions of

8

dollars for its individual and class action clients. Detailed information on the Firm's experience and ability is contained in the attached Declaration of Norman E. Siegel, Ex. 2, and the attachment thereto.

The firm has extensive experience serving in leadership roles in complex and class action litigation throughout the Eighth Circuit and around the country. In this district, Stueve Siegel is appointed to the leadership group in *In re "Simply Orange" Orange Juice Marketing and Sales Practices Litigation*, MDL No. 2361, before the Hon. Fernando J. Gaitan. Previously, in addition to *In Re Pre-Filled Propane Tank Marketing and Sales Practices Litigation*, MDL No. 2086, Mr. Siegel served as lead and liaison counsel in *In re H&R Block, Inc. Express IRA Marketing Litigation*, MDL No. 1786, before the late Hon. Richard E. Dorr. In the District of Minnesota, Mr. Siegel currently serves on the Consumer Cases Steering Committee in *In re Target Corporation Customer Data Security Breach Litigation*, MDL No. 2522, before the Hon. Paul A. Magnuson. Mr. Siegel also currently represents the National Credit Union Administration as receiver for failed corporate credit unions suing JPMorgan, RBS, Wachovia, and other national banks related to the sale of mortgage backed securities. Siegel Decl., ¶ 3.

Stueve Siegel Hanson has a diverse antitrust practice. The firm has for years represented small and large businesses in pursuing their individual antitrust claims. *See, e.g.*, *Associated Wholesale Grocers, Inc. v. United Egg Producers*, No. 10CV2171, Dist. Ct. Wyandotte County, Kansas (price fixing in the domestic egg market); *Seaboard Corp. v. Marsh Inc.*, 09CV09449, Dist. Ct. Johnson County, Kansas (insurance bid rigging). The firm also has deep experience fighting for classes of consumers and small businesses in antitrust class actions. *See, e.g.*, *Giuliano v. Sandisk Corp.*, No. 10-02787 (N.D. Cal.) (co-lead counsel for class of purchasers of

flash memory products); *In re Aftermarket Automotive Lighting Products Antitrust Litigation*, No. 09-02007 (N.D. Cal.) (co-lead counsel in auto part price-fixing action). Siegel Decl., ¶ 4.

In short, Mr. Siegel and Stueve Siegel Hanson are intimately familiar with the law and claims in this case, and local procedure and practice in this Court. The firm has ample resources to staff and finance the prosecution of this action over a period of years, and is committed to doing so along with Hagens Berman. *See* Fed. R. Civ. P. 23(g)(1)(A)(iv); Siegel Decl., ¶ 8. Stueve Siegel Hanson is uniquely positioned to work collaboratively with the dozens of plaintiffs' counsel involved in this matter, just as it did in the previous proceedings before this Court. *Id.* at ¶ 5.

## CONCLUSION

The proposed leadership structure and selections for appointment offer extensive experience, knowledge, and resources in the field of consumer and antitrust class actions. Adopting the proposed structure and appointing Robert Carey of Hagens Berman Sobol Shapiro and Norman Siegel of Stueve Siegel Hanson as co-lead counsel for indirect purchasers will protect the interests of the putative class members. *See* Fed. R. Civ. P. 23(g)(4) (class counsel must fairly and adequately represent the interests of the class). *Ortiz* Plaintiffs therefore respectfully request that the Court adopt their suggested leadership structure and enter the proposed order submitted herewith.

Dated: November 5, 2014

                              Respectfully Submitted:

**STUEVE SIEGEL HANSON LLP**

By   */s/ Norman E. Siegel*
Norman E. Siegel, Mo. Bar #44378
Barrett J. Vahle, Mo. Bar #56674
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Phone: (816) 714-7100
Facsimile: (816) 714-7101
E-mail: siegel@stuevesiegel.com
        vahle@stuevesiegel.com

**HAGENS BERMAN SOBOL SHAPIRO LLP**
Robert B. Carey
Leonard W. Aragon
11 West Jefferson Street, Suite 1000
Phoenix, Arizona 85003
Telephone: (602) 840-5900
Facsimile: (602) 840-3012
Email: rob@Hagens Bermanlaw.com
       leonard@Hagens Bermanlaw.com

**THE PAYNTER LAW FIRM PLLC**
Stuart M. Paynter
Sara Willingham
1200 G Street N.W., Suite 800
Washington, DC 20005
Tel.: (202) 626-4486
Fax: (866) 734-0622
Email: stuart@paynterlawfirm.com
       swillingham@paynterlawfirm.com

**CERTIFICATE OF SERVICE**

I hereby certify that on November 5, 2014, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically send a notice of electronic filing to counsel of record.

                                               */s/ Norman E. Siegel*
                                               Norman E. Siegel