# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

| | | |
|---|---|---|
| IN RE:  PRE-FILLED PROPANE | ) | **MDL NO. 2567** |
| TANK ANTITRUST LITIGATION | ) | |
| | ) | **Master Case No. 14-02567-MD-W-GAF** |
| **ALL ACTIONS** | ) | |

## ORDER

Presently before the Court is Defendants Ferrellgas Partners, L.P.; Ferrellgas, L.P.[1]; UGI Corporation; AmeriGas Partners, LP; AmeriGas Propane, Inc.; and AmeriGas Propane, LP's[2] (collectively "Defendants") Motion to Dismiss the Indirect Purchaser Plaintiffs' Consolidated Class Action Complaint (the "Indirect Purchaser Plaintiffs' CAC").  (Doc. # 135).  Plaintiffs Mario Ortiz, Steven Tseffos, Stephen Morrison, Michael S. Harvey, Arthur Hull, Gregory Ludvigsen, Alan Rockwell, Alex Chernavsky, James Halgerson, Thomas R. Clark, Bryce Mander, and Sean Venezia (collectively the "Indirect Purchaser Plaintiffs") oppose.  (Doc. # 149).

Also before the Court is Defendants' Motion to Dismiss the Direct Purchaser Plaintiffs' CAC.  (Doc. # 137).  Plaintiffs Hartig Drug Company, Inc.; Jason Moore's Texaco, L.L.C.; Glenville Shell LLC; AQ Investments, LLC; LJax Enterprises, Inc.; J & V Management, LLC; Butch's Central Coastal, Inc.; Zerka's Party Store, Inc.; OM Commercial Neenah Oil, Inc.; CCLAS, Inc.; Hopewell Exxon, LLC; Tuban Petroleum LLC; 33 and a Third, LLC; Tuban 610 LLC; Highway 182 LLC; West Main Street LLC; Roth's Country Corner, Inc; 1919 Airline Hwy LLC; East Airline LLC; Gramercy Cheap Smokes LLC; Conti's Service Center, Inc.;

---

[1] Ferrellgas Partners, L.P. and Ferrellgas, L.P. will be collectively referred to as "Ferrellgas." Ferrellgas does business under the name Blue Rhino.  (Direct Purchaser Plaintiffs' Consolidated Class Action Complaint ("Direct Purchaser Plaintiffs' CAC") ¶ 1).

[2] AmeriGas Partners, LP; AmeriGas Propane, Inc.; and AmeriGas Propane, LP will be collectively referred to as "AmeriGas."

1

Route 49 Gas & Go, Inc.; Morgan-Larson, LLC; Surinder Kaur, Inc.; Ashville General Store, Inc.; Birdie's, Inc.; Lochraven Sunoco, Inc.; Arrow Hardware, LLC; American Auto Repair; Johnson Auto Electric, Inc.; Cedar Holly Investments, LLC; CEFO Enterprise Corp.; Tuckerton Lumber Company; Ace High Auto Repair & Propane; JonWall, Inc.; RC Gasoline, Speed Stop 32; Inc., Zarco USA, Inc.; Dunmore Oil Co., Inc.; JoJo Oil Co., Inc.; Ekonomy Enterprises, Inc.; and Yocum Oil Company, Inc. (collectively the "Direct Purchaser Plaintiffs") oppose.[3] (Doc. # 148). For the reasons stated below, Defendants' Motion to Dismiss the Indirect Purchaser Plaintiffs' CAC is GRANTED in part and DENIED in part and Defendants' Motion to Dismiss the Direct Purchaser Plaintiffs' CAC is GRANTED.

## DISCUSSION

### I.     FACTS

Defendants are the largest distributors of pre-filled propane exchange tanks. (Direct Purchaser Plaintiffs' CAC ¶ 1). Pre-filled propane exchange tanks are portable steel cylinders containing propane; they are used primarily to power outdoor grills and heaters. (*Id.* ¶ 2). The tanks come in a standard size and can be filled with up to twenty pounds of propane. (*Id.* ¶ 3). Before 2008, the tanks were filled with seventeen pounds of propane. (*Id.*). From 2006 to 2008 the cost of propane rose. (*Id.* ¶¶ 4-5). In 2008, Defendants reduced the fill level of the tanks from seventeen to fifteen pounds of propane per tank while maintaining the same price per tank. (*Id.* ¶ 7).

In 2009, a group of plaintiffs filed suit against Ferrellgas and AmeriGas alleging that they had acted in concert to reduce the amount of propane contained within the tanks and thus,

---

[3] The Direct and Indirect Purchaser Plaintiffs are referred to collectively as "Plaintiffs."

2

artificially increase the price of the tanks[4]. (Case No. 09-02086-MD-W-GAF, Amended Complaint ¶¶ 1-4). The 2009 plaintiffs alleged that the actions of Ferrellgas and AmeriGas were in violation of Section 1 of the Sherman Act and state antitrust and consumer protection laws. (*Id.*). The named plaintiffs in *In re Propane I* were all indirect purchasers, individuals who purchased the pre-filled propane exchange tanks from companies to which Ferrellgas or AmeriGas initially sold them. (*Id.* ¶¶ 10-29). However, the Amended Complaint in *In re Propane I* defined their class as "[a]ll persons who purchased a Propane Tank sold, marketed, or distributed by any Defendant during the applicable limitations periods." (*Id.* ¶ 77).

On December 8, 2009, the plaintiffs moved for preliminary approval of settlement agreements which included only indirect purchasers. (*Id.*, Doc. # 37). The settlement agreements were granted final approval on October 6, 2010. (*Id.*, Doc. # 166). The settlement agreements contained a release provision. (*Id.*, Docs. ## 114, 250). The release provision in the settlement with AmeriGas released AmeriGas from "any and all liabilities, claims, rights, suits, and causes of action, of any kind whatsoever, that [the plaintiffs] may have or may have had . . . whether known or unknown . . . that could have been alleged." (*Id.*, Doc. # 114-4, p. 24). The release provision in the settlement with Ferrellgas released Ferrellgas from "any and all liabilities, claims, rights, suits, and causes of action, of any kind whatsoever, that [the plaintiffs] may have or may have had . . . whether known or unknown . . . that were or could have been sought or alleged." (*Id.*, Doc. # 250-1, p. 20).

On March 27, 2014, the Federal Trade Commission issued a complaint against Defendants alleging that Defendants had restrained price competition because of their 2008 decision to decrease the fill level of the propane tanks. (Direct Purchaser Plaintiffs' CAC ¶ 16).

_____

[4] This 2009 action will be referred to as *In re Propane I*.

Shortly thereafter, Plaintiffs filed the present suit. (*See id.*). Plaintiffs allege that the 2008 reduction in fill level was due to improper collusion between Defendants who conspired to force Direct Purchaser Plaintiffs to accept the fill reduction and agreed not to compete with one another. (*Id.* ¶¶ 8-11). Plaintiffs allege that this was a violation of Section 1 of the Sherman Act. (*Id.*). Plaintiffs in this action include both direct purchasers, those that purchased the tanks directly from Defendants for resale, and indirect purchasers. (*See* Docket Sheet).

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint that fails to state a claim upon which relief may be granted. When considering a Rule 12(b)(6) motion to dismiss, a court treats all well-pleaded facts as true and grants the non-moving party all reasonable inferences from the facts. *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). However, courts are "not bound to accept as true a legal conclusion couched as a factual allegation" and such "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotation marks omitted). A Rule 12(b)(6) motion should be granted only if the non-moving party fails to plead facts sufficient to state a claim "that is plausible on its face" and would entitle the party to the relief requested. *Twombly*, 550 U.S. at 570.

## III.    ANALYSIS

### A.    Release Provision

Defendants first argue that the Indirect Purchaser Plaintiffs' CAC should be dismissed because the settlement agreements in *In re Propane I* released these claims. (Doc. # 136, p. 8). "Plaintiffs in a class action may release claims that were or could have been pled in exchange for

4

settlement relief." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 106 (2d Cir. 2005). "Settlement agreements . . . are viewed in light of governing contract principles." *Harris v. Brownlee*, 477 F.3d 1043, 1047 (8th Cir. 2007). "[T]he basic rule of the law of contracts [is] that the purpose of every contract is to bind *the parties* to performance." *Pac. Trading Co. v. Mouton Rice Milling Co.*, 184 F.2d 141, 147 (8th Cir. 1950) (emphasis added). "Parties to a contract are ordinarily bound by its terms; strangers are not." *Davidson v. Enstar Corp.*, 848 F.2d 574, 578-79 (5th Cir. 1988). Thus, the release provisions from the *In re Propane I* settlement agreements bind only those individuals who were parties to the settlement agreements.

The AmeriGas settlement agreement defined the settlement class as "all people who purchased or exchanged one or more of AmeriGas's pre-filled propane gas cylinders in the United States not for resale, between June 15, 2005 and November 30, 2009." (Case No. 09-02086-MD-W-GAF, Doc. # 114-4, p. 12). The Ferrellgas settlement agreement defined the settlement class as "all people who purchased or exchanged one or more of Ferrellgas's pre-filled propane gas cylinders in the United States not for resale, between June 15 2005 and the date of Preliminary Approval." (*Id.*, Doc. # 250-1, p. 9). The date of preliminary approval was October 13, 2011. (*Id.*, Doc. # 254). Thus, to have been a party to the *In re Propane I* AmeriGas settlement agreement, an individual must have purchased a pre-filled propane tank before November 30, 2009, and to have been a party to the Ferrellgas settlement agreement a purchase must have been made before October 13, 2011.

"When considering a motion to dismiss for failure to state a claim, a court must accept the factual allegations in the complaint as true, and may not consider evidence outside the complaint." *Penn v. Iowa State Bd. of Regents*, 999 F.2d 305, 307 (8th Cir. 1993). The Indirect Purchasers' Plaintiffs CAC defines the class as individuals who purchased pre-filled propane

tanks from AmeriGas after December 1, 2009 and from Ferrellgas after October 14, 2011. (Indirect Purchaser Plaintiffs' CAC ¶ 99). Further, the named Indirect Purchaser Plaintiffs do not allege that they made any purchases before December 1, 2009. (*Id.* ¶¶ 93-98). Defendants allege that this group "almost certainly includes indirect purchasers who were" parties to the *In re Propane I* settlements. (Doc. # 136, p. 9). However, Defendants point to nothing in the Indirect Purchaser Plaintiffs' CAC, or elsewhere, that indicates this is so. (*See* Docs. ## 136, 158). Accordingly, at this point the Court is unable to conclude that any members of the current case were included in the *In re Propane I* settlement agreement and thus bound by its release provision. Therefore, the Court believes it would be premature to examine the validity and scope of the release provision at this time.

## B. Statute of Limitations

Defendants next assert that Plaintiffs' claims should be dismissed because they are barred by the statute of limitations. (Doc. # 138, p. 11). "[A] motion to dismiss may be granted when a claim is barred under a statute of limitations." *Varner v. Peterson Farms*, 371 F.3d 1011, 1016 (8th Cir. 2004). Plaintiffs raise claims under Section 1 of the Sherman Act.[5] (Direct Purchaser Plaintiffs' CAC ¶ 134; Indirect Purchaser Plaintiffs' CAC ¶ 147). Claims under the Sherman Act have a four year statute of limitations. 15 U.S.C. § 15b. "Generally, a cause of action accrues and the statute begins to run when a defendant commits an act that injures a plaintiff's business." *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 338 (1971). Plaintiffs allege that Defendants agreed to reduce the fill level in the pre-filled propane tanks no later than June of 2008 and all Defendants began selling fifteen pound tanks by August 1, 2008. (Direct

---

[5] The Indirect Purchaser Plaintiffs also raise a claim for injunctive relief under Section 1 of the Sherman Act. (Indirect Purchaser Plaintiffs' CAC ¶ 139). The timeliness of this claim will be addressed separately below. Additionally, the Indirect Purchaser Plaintiffs assert claims for violation of state antitrust laws. (*Id.* ¶¶ 156, 164-185).

6

Purchaser Plaintiffs' CAC ¶ 66; Indirect Purchaser Plaintiffs' CAC ¶ 60). Thus, absent any tolling theories, the statute of limitations expired on August 1, 2012, almost two years before the first claim was filed in this case.

### 1. Administrative Complaint Theory

Plaintiffs first allege that the FTC's March 27, 2014 filing of an administrative complaint against Defendants suspended the statute of limitations. (Doc. # 149, p. 25).

> Whenever any civil or criminal proceeding is instituted by the United States to prevent, restrain, or punish violations of any of the antitrust laws . . . the running of the statute of limitations in respect to every private or State right of action arising under said laws and based in whole or in part on any matter complained of in said proceeding shall be suspended during the pendency thereof and for one year thereafter.

15 U.S.C. § 16(i). The FTC instituted a proceeding against Defendants that challenged the same conduct Plaintiffs challenge in this matter. (Indirect Purchaser Plaintiffs' CAC ¶ 136). The action was filed on March 27, 2014. (*Id.*). Thus, the filing of the administrative complaint moved the statute of limitations period back to March 27, 2010; four years prior to the administrative complaint. *See City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 460 (2d Cir. 1974) ("[T]he statute of limitations in private antitrust suits generally cuts off claims that arise more than four years before the inception of the government enforcement action."). However, the challenged conduct occurred in the summer of 2008. (Direct Purchaser Plaintiffs' CAC ¶ 66; Indirect Purchaser Plaintiffs' CAC ¶ 60). Thus, the challenged conduct does not fall within the adjusted limitations period. Accordingly, this theory alone does not save Plaintiffs' claims from being barred by the statute of limitations.

### 2. Continuing Violation Theory

Plaintiffs next argue that the statute of limitations should be tolled pursuant to the continuing violations theory. (Doc. # 148, p. 6). "Under the so-called continuing-violation

7

theory, each overt act that is part of the violation and that injures the plaintiff . . . starts the statutory period running again." *Midwestern Mach. Co. v. Nw. Airlines, Inc.*, 392 F.3d 265, 269 (8th Cir. 2004) (omission in original) (quoting *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 189 (1997)) (internal quotation marks omitted). "An overt act has two elements: (1) it must be a new and independent act that is not merely a reaffirmation of a previous act, and (2) it must inflict new and accumulating injury on the plaintiff. Acts that are merely 'unabated inertial consequences' of a single act do not restart the statute of limitations." *Varner*, 371 F.3d at 1019 (internal citations omitted). "[T]he statute runs from the last overt act." *Varner*, 371 F.3d at 1019 (quoting *Peck v. General Motors Corp.*, 894 F.2d 844, 849 (6th Cir. 1990)) (internal quotation marks omitted). Thus, for the continuing violations theory to apply, an overt act must have occurred after March 27, 2010, the beginning of the adjusted limitations period.

Plaintiffs first argue that each time Defendants sold the propane exchange tanks filled with only fifteen pounds of propane, an overt act was committed that satisfied the continuing violations theory. (Doc. # 148, p. 8). Plaintiffs rely primarily on *Klehr* and *In re Wholesale Grocery Products Antitrust Litigation*, 752 F.3d 728 (8th Cir. 2014) to support their contention. (*See* Doc. # 148). In *Klehr*, the Supreme Court stated that "in the case of a 'continuing violation,' say, a price–fixing conspiracy that brings about a series of unlawfully high priced sales over a period of years, 'each overt act that is part of the violation and that injures the plaintiff,' *e.g.,* each sale to the plaintiff, 'starts the statutory period running again.'" 521 U.S. at 189 (quoting P. Areeda & H. Hovenkamp, Antitrust Law ¶ 338b, p. 145 (rev. ed. 1995)). However, in *Klehr*, the plaintiffs alleged that the defendants had engaged in mail and wire fraud in violation of RICO and sought damages twenty years after the alleged violations occurred. *Id.* at 183-84. The plaintiffs contended that the last predicate act rule saved their claim from being

8

barred by the statute of limitations and the Court was evaluating the rule's lawfulness. *Id.* at 186. The rule allowed a plaintiff to recover, "as long as [a defendant] committed one predicate act within the limitations period . . . not just for any added harm caused them by that late-committed act, but for all the harm caused them by all the acts that make up the total pattern." *Id.* at 186-86. In analyzing the law, the Court turned to the statute of limitations in the context of the Clayton Act as a useful analogy. *Id.* at 188. It was in that context that the aforementioned quote occurred. Further, the primary purpose of that language was to explain that, unlike with the last predicate act rule, "the commission of a separate new overt act generally does not permit the plaintiff to recover for the injury caused by old overt acts outside the limitations period." *Id.* at 189. Thus, *Klehr* never ruled that each time a sale is made at a steady supra-competitive price, the overt act requirement of the continuing violations theory in the context of an alleged price fixing conspiracy is met.

This becomes even clearer when considered in conjunction with *Wholesale Grocery Products*. In *Wholesale Grocery Products*, two grocery wholesalers agreed in 2003 to divide the market leaving each with a monopoly in their territories. 752 F.3d at 730. The plaintiffs filed their claim in 2008. *Id.* The Eighth Circuit evaluated whether the four year statute of limitations barred the plaintiffs' claim and found that the case was controlled by *Klehr*. *Id.* at 736. The Eighth Circuit reaffirmed the need for a "'separate new overt act'" to satisfy the continuing violation theory. *Id.* (quoting *Klehr*, 521 U.S. at 189-90). The court determined that "the anticompetitive nature of the wholesalers' agreement was not revealed until several years" later, when, during the four years preceding suit, the wholesalers increased their fees. *Id.* The Eighth Circuit stated that "a monopolist commits an overt act each time he uses unlawfully acquired market power to charge an *elevated* price." *Id.* (emphasis added). The Eighth Circuit reasoned

Case 4:14-cv-00967-GAF   Document 93   Filed 07/02/15   Page 9 of 25

that without such a rule, "two parties could agree to divide markets for the purpose of raising prices, wait four years to raise prices, then reap the profits of their illegal agreement with impunity because any antitrust claims would be time barred." *Id.* Thus, the key fact in *Wholesale Grocery Products* was that a price elevation occurred within the limitations period.

Unlike in *Wholesale Grocery Products*, the anticompetitive nature of Defendants' agreement was not revealed years later, during the limitations period. Instead, Plaintiffs allege that the anticompetitive nature of Defendants' agreement was apparent in 2008 when Defendants decreased the amount of propane in the exchange tanks without a corresponding decrease in price. (Direct Purchaser Plaintiffs' CAC ¶ 7). Further, unlike in *Wholesale Grocery Products*, there has been no allegation of a new, separate overt act during the limitations period because there has not been any allegation that Defendants further elevated the relative price of the exchange tanks by further decreasing the fill level. (*See id.*). Because no such price elevation occurred within the limitations period, the overt act requirement is not met.

The plaintiffs in *Insulate SB, Inc. v. Advanced Finishing Systems, Inc.*, Civil No. 13-2664 ADM/SER, 2014 WL 943224 (D. Minn. Mar. 11, 2014) attempted to use the same argument that Plaintiffs are alleging in this case. In *Insulate SB*, the plaintiffs alleged that the defendants bought out their existing competitors and conspired to exclude new competitors which allowed them to raise prices. 2014 WL 943224, at *1. The plaintiffs argued that their claim was not barred by the statute of limitations because, the defendants "committed an overt act each time a supra-competitive price was changed." *Id.* at *7. In rejecting their argument, the court looked to *Klehr* and *Wholesale Grocery Products* and determined that "[w]here a defendant's continued sales under an anticompetitive arrangement merely enforce the initial, unabated arrangement, the sales do not constitute a continuing violation." *Id.* Because there were no allegations that "the

10

initial price-fixing agreement was abated" the court determined that continuing to charge a stable supra-competitive price was insufficient to constitute an overt act. *Id.*

Plaintiffs' argument was also contemplated and rejected in *Southeast Missouri Hospital v. C.R. Bard, Inc.*, No. 1:07CV0031 TCM, 2008 WL 4104534 (E.D. Mo. Aug. 27, 2008). In *Southeast Missouri Hospital*, the plaintiffs alleged that the defendants developed an anticompetitive scheme using exclusionary and market share maintenance contracts in the sale of urological catheters to prevent competition. 2008 WL 4104534, at *1. The plaintiffs alleged that their claims were not barred by the statute of limitations because "each sale of the urological catheters at unlawful prices and each unknowing remittance for payment [we]re continuing violations." *Id.* at *3. The court rejected the argument and stated that "[s]ales of a product pursuant to an allegedly illegal arrangement are not new, overt acts." *Id.*

Accordingly, it is not the law that each time a sale is made at a stable supra-competitive price the overt act requirement is met. "To hold otherwise would effectively abrogate the statute of limitations in situations such as the one now at issue because each sale of a product pursuant to the underlying agreement would start the statu[t]e of limitations running anew." *Id.* This would make such a defendant indefinitely subject to suit and would undermine the policies behind the statutes of limitation which insure "the defense is [not] hampered by lost evidence, faded memories, . . . disappearing witnesses, and . . . unfair surprise." *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 473 (1975). Thus, each time Defendants sold the propane exchange tanks filled with only fifteen pounds of propane, an overt act was not committed that satisfied the continuing violations theory.

Plaintiffs next argue that they sufficiently alleged that Defendants committed other overt acts sufficient to satisfy the continuing violations theory. (Doc. # 148, p. 17). In their complaint,

11

Plaintiffs alleged that "as late as 2010, [Ken] Janish[6] repeatedly dismissed concerns that Blue Rhino might undercut AmeriGas on price or fill levels with words to the effect of, 'I talked to Blue Rhino, and that's not going to happen.' AmeriGas and Blue Rhino continued to have discussions regarding pricing for contracts at least through 2010." (Direct Purchaser Plaintiffs' CAC ¶ 13). Plaintiffs further alleged that "[e]mployees from Blue Rhino and AmeriGas participated in regular calls to discuss their co-packing agreements, presenting ample opportunities for conspiratorial communications." (*Id.* ¶ 47). Plaintiffs additionally alleged that "Janish had similar conversations with employees of Blue Rhino on numerous occasions . . . until at least late 2010" and that "[t]hrough at least the end of 2010, Defendants regularly communicated to assure compliance with the conspiracy . . . Defendants communicated with each other to reassure each other of their compliance." (*Id.* ¶¶ 60, 92, 125).

"The typical antitrust continuing violation occurs in a price-fixing conspiracy . . . when conspirators continue to meet to fine-tune their cartel agreement." *Midwestern Mach. Co.*, 392 F.3d at 269. "These meetings are overt acts that begin a new statute of limitations because they serve to further the objectives of the conspiracy." *Id.* In contrast, mere reaffirmations of a previous act are not overt acts that restart the statute of limitations. *See Varner*, 371 F.3d at 1019. Thus, the operative question is whether Plaintiffs sufficiently alleged that these phone calls fine-tuned or furthered the conspiracy, or whether their allegations amounted to mere reaffirmations of Defendants' previous decision to collectively reduce fill levels in their propane tanks.

In *Insulate SB*, the plaintiffs alleged that a "letter from [one defendant] to [another defendant] 'reminding them' they were not to carry the Gama product line [as agreed to under

_____

[6] Ken Janish is AmeriGas's Director of National Accounts. (Direct Purchaser Plaintiffs' CAC ¶ 9).

their conspiracy] was an overt act in furtherance of the conspiracy that started the limitations period running anew." 2014 WL 943224, at *7. The court rejected this argument stating that the "letter merely reflected and reaffirmed the alleged prior agreement . . . and therefore did not restart the limitations period." *Id.* The court in *Insulate SB* additionally concluded that even providing further instructions on how to carry out the conspiracy amounted to a "reflection and reaffirmation of the alleged prior refusal to deal" and thus was not an overt act. *Id.* at *7 n.5.

Like in *Insulate SB*, Plaintiffs allege that Defendants communicated to assure that each party was complying with the conspiracy. (*See* Direct Purchaser Plaintiffs' CAC ¶¶ 13, 47, 60, 92, 125). Also like in *Insulate SB*, Plaintiffs make no allegations that Defendants ever made any changes or modifications to their agreement during the limitations period. (*See id.*). Thus, these communications were mere reaffirmations of the prior agreement and are insufficient to constitute overt acts.

Plaintiffs cite to a number of cases from outside of the Eighth Circuit to support their argument that the alleged communications were overt acts. Plaintiffs cite to *United States v. Hayter Oil Co. of Greeneville, Tennessee*, 51 F.3d 1265 (6th Cir. 1995) for the proposition that "evidence of telephone calls between defendants with conspiratorial subject matter [was] sufficient to find existence of [a] continuing conspiracy." (Doc. # 148, p. 18 n.16). However, this Sixth Circuit case involved a criminal conspiracy action under the Sherman Act where "[p]roof of an overt act is not required." *Hayter Oil*, 51 F.3d at 1270. Thus, "the government [wa]s only required to prove that the agreement existed during the statute of limitations." *Id.* The court found only that telephone calls between the defendants were sufficient to prove that the conspiracy was still in place. *Id.* at 1271. Accordingly, *Hayter Oil* does nothing to establish that confirmation phone calls constitute overt acts.

13

Plaintiffs also cite to *West Penn Allegheny Health System, Inc. v. UPMC*, 627 F.3d 85 (3d Cir. 2010) for the proposition that the court "reject[ed the] argument [that the] continuing violation doctrine did not apply because injurious acts occurring during limitations were merely 'reaffirmations.'" (Doc. # 148, p. 19 n.17). However, in *West Penn*, the Third Circuit rejected the proposition that a mere reaffirmation of the injurious conduct did not meet the overt act requirement. 627 F.3d at 106. Therefore, the court made no finding on whether the alleged acts were mere reaffirmations. *See id.* Unlike the Third Circuit, the Eighth Circuit has unequivocally held that mere reaffirmations are not overt acts. *See Varner*, 371 F.3d at 1019. Thus, *West Penn* does not support Plaintiffs' argument. Accordingly, Plaintiffs have failed to allege any overt act during the limitations period sufficient to support the continuing violations theory. Therefore, the continuing violations theory does not prevent Plaintiffs' claims from being time barred in this case.

### 3. *American Pipe Tolling*

Plaintiffs finally allege that the statute of limitations should be tolled pursuant to the tolling theory from *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974).[7] (Doc. # 148, p. 21). The Supreme Court in *American Pipe* held that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." 414 U.S. at 554. "The *American Pipe* rule is designed to protect the federal procedural interest by preventing duplicative litigation from purported class members during the period that certification is pending." *Great Plains Trust Co. v. Union Pac. R.R. Co.*, 492 F.3d 986, 997 (8th

---

[7] Plaintiffs however, admit that this tolling theory is inapplicable to Defendant UGI Corporation. (Doc. # 148, p. 12 n.8; Doc. # 149, p. 26 n.30). Accordingly, no tolling theory is sufficient to prevent Plaintiffs' claims against UGI Corporation from being barred by the statute of limitations. Thus, Plaintiffs claims against UGI Corporation are DISMISSED.

Cir. 2007). The Supreme Court noted that such a tolling rule is not inconsistent with the statutes of limitation, which are meant "to put defendants on notice of adverse claims and to prevent plaintiffs from sleeping on their rights." *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 352 (1983). "[T]hese ends are met when a class action is commenced. . . . [A] class complaint 'notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment.'" *Id.* at 352-53 (quoting *Am. Pipe*, 414 U.S. at 555). The overarching question in determining whether *American Pipe* tolling applies is whether the previous "class action claims and the accompanying class description were sufficient to put each defendant on notice of the substantive . . . claims brought in [the present case] and to inform each defendant of the 'generic identities of [the present] plaintiffs." *In re Gen. Am. Life Ins. Co. Sales Practices Litig.*, 391 F.3d 907, 915 (8th Cir. 2004).

Defendants first allege that *American Pipe* tolling is inapplicable in this case because *American Pipe* tolling cannot be used to toll the statute of limitations for a subsequent class action. (Doc. # 138, p. 13). While Defendants may be correct that other circuits do not allow *American Pipe* tolling for subsequent class actions, the Eighth Circuit has applied *American Pipe* tolling in such a situation. *See Great Plains Trust*, 492 F.3d at 997. "Whether the *American Pipe* rule applies to subsequent class actions, however, depends on the reasons for the denial of certification of the predecessor action." *Id.* The Eighth Circuit in *Great Plains Trust* stated that *American Pipe* tolling would apply to subsequent class actions when "'class certification [in the previous action was] denied solely on the basis of the lead plaintiffs' deficiencies'" and when "the later action was not an attempt to relitigate the denial of certification or correct a procedural deficiency." *Id.* (quoting *Yang v. Odom*, 392 F.3d 97, 111 (3d Cir. 2004). In *Great Plains Trust*,

15

the prior class action was voluntarily dismissed before a certification hearing was held, thus there was no denial of certification. *Id.* at 997 n.3. The Eighth Circuit "decline[d] to determine whether this fact [wa]s material . . . [and] assume[d], for the sake of discussion, that the previous class actions warrant application of the *American Pipe* rule." *Id.*

Like in *Great Plains Trust*, *In re Propane I* did not involve a denial of certification, instead the settlement classes were granted certification by this Court. (Case No. 09-02086-MD-W-GAF, Docs. ## 253, 289). Although the Eighth Circuit has not spoken specifically about whether *American Pipe* tolling applies in such a circumstance, this Court believes that the language of *Great Plains Trust* indicates that it should apply. Specifically, the Eighth Circuit stated that *American Pipe* tolling applies when the subsequent class action is not an attempt to relitigate the denial of class certification. *Great Plains Trust*, 492 F.3d at 997; *See also Berry v. Volkswagen of Am., Inc.*, No. 09-0484-CV-W-ODS, 2009 U.S. Dist. LEXIS 65624, *6 (W.D. Mo. July 28, 2009) ("The tolling rule, however, cannot be used by plaintiffs to sequentially relitigate a denial of class certification."). As this Court has previously stated, the concern with the application of *American Pipe* to subsequent class actions is that plaintiffs would be allowed infinite "bites at the apple" to relitigate the same issues while "toll[ing] the statute of limitations indefinitely." *Farthing v. United Healthcare of the Midwest, Inc.*, No. 2:98-4262-CV-C-GAF, 2000 U.S. Dist. LEXIS 21995, *26 (W.D. Mo. Oct. 24, 2000). In this case, Plaintiffs are not seeking a second bite at the apple or attempting to relitigate certification issues that were not previously decided in their favor. Thus, this Court believes that *American Pipe* tolling applies in this type of subsequent class action.

Just because *American Pipe* tolling applies to this type of subsequent class action does not mean that all of the other requirements for *American Pipe* tolling are met in this case.

Defendants allege that *American Pipe* tolling is not available to the Direct Purchaser Plaintiffs because their current claims were not asserted in *In re Propane I*. (Doc. # 138, p. 17). The theory behind *American Pipe* tolling is that the previous class action "notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs." *Am. Pipe*, 414 U.S. at 555. In his concurring opinion in *Crown, Cork & Seal*, Justice Powell reflected on this rationale and stated "[w]hen thus notified, the defendant normally is not prejudiced by tolling of the statute of limitations. It is important to make certain, however, that *American Pipe* is not abused by the assertion of claims that differ from those raised in the original class suit." 462 U.S. at 355 (Powell, J., concurring). The Supreme Court has further stated that "the tolling effect given to the timely prior filings in *American Pipe* and in *Burnett* [*v. New York Central R.R. Co.*, 380 U.S. 424 (1965)] depended heavily on the fact that those filings involved exactly the same cause of action subsequently asserted." *Johnson*, 421 U.S. at 467.

District Courts within the Eighth Circuit have used this language to determine that *American Pipe* tolling does not apply to the assertion of claims different from those asserted in the previous action. *See Zarecor v. Morgan Keegan & Co.*, No. 4:11CV00824 BSM, 2013 WL 5687618, at *2 (E.D. Ark. Oct. 15, 2013) ("[T]olling is not extended to those circumstances where the later causes of action are not identical to those originally brought in the class action."); *Wells v. FedEx Ground Package Sys., Inc.*, No. 4:10CV2080 JCH, 2011 WL 1769665, at *6 (E.D. Mo. May 9, 2011) (finding that *American Pipe* tolling "does not leave[ ] a plaintiff free to raise different or peripheral claims following denial of class status.") (alteration in original) (quoting *Williams v. Boeing Co.*, 517 F.3d 1120, 1136 (9th Cir. 2008)) (internal quotation marks omitted); *Burns v. Ersek*, 591 F. Supp. 837, 843 (D. Minn. 1984) ("[T]he weight of authority is

17

that [*American Pipe*] tolling applies only to causes of action raised in the first suit."). In this case, the Direct Purchaser Plaintiffs assert only one cause of action, violation of Section 1 of the Sherman Act, and seek compensatory and treble damages. (Direct Purchaser Plaintiffs' CAC ¶ 137). However, this cause of action was not asserted in *In re Propane I* or any of its underlying complaints. (*See* Case No. 09-02086-MD-W-GAF). Thus, *American Pipe* tolling does not apply to the Direct Purchaser Plaintiffs' claims.

Plaintiffs encourage this Court to ignore these district court cases and the language from the Supreme Court and instead look to precedent from the Sixth and Second Circuits that stand for the proposition that *American Pipe* tolling only requires that a subsequent claim could have been asserted in the prior action. (Doc. # 148, p. 27). However, this Court has reviewed those cases and does not find them to be persuasive in light of the statements from the Supreme Court on the issue. Further this Court finds the reasoning of the Seventh Circuit persuasive when it critiqued the ruling of the Sixth Circuit stating that it, "push[ed] *American Pipe* beyond its own rationale." *In re Copper Antitrust Litig.*, 436 F.3d 782, 796 (7th Cir. 2006). Additionally, Defendants fail to cite to any precedent within this Circuit that supports their proposition. (*See* Doc. # 148). Accordingly, the Direct Purchaser Plaintiffs have failed to establish any tolling theory sufficient to prevent their claim from being barred by the statute of limitations.

Defendants next argue that *American Pipe* tolling is insufficient to support the Indirect Purchaser Plaintiffs' claims[8] because, any *American Pipe* tolling ended on December 8, 2009,

---

[8] The Indirect Purchaser Plaintiffs' state law antitrust claims are governed by the same *American Pipe* standards as their Sherman Act claim. The Indirect Purchaser Plaintiffs' bring state law claims under the antitrust laws of Kansas, Arizona, California, the District of Columbia, Florida, Iowa, Maine, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Mexico, New York, North Carolina, North Dakota, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin. (Indirect Purchaser Plaintiffs' CAC ¶¶ 156, 164-185). Many of these states have explicitly adopted *American Pipe*. *See e.g. Great Plains Trust Co.*, 492 F.3d at 997 ("Kansas has

18

when the plaintiffs in *In re Propane I* moved for preliminary approval of their class settlement and defined the class of persons as individuals who purchased or exchanged the tanks "between August 1, 2008 and November 30, 2009." (Doc. # 136, p. 19). Thus, according to Defendants, tolling ended over three months before the adjusted limitations period began on March 27, 2010. (*See* Doc. # 138, p. 27). The Indirect Purchaser Plaintiffs agree that the current class of plaintiffs was excluded from the class definition in the *In re Propane I* settlement; however, they argue that for tolling purposes they were not excluded until the class settlement was granted final approval by this Court on October 6, 2010, which is within the adjusted limitations period. (Doc. # 149, p. 27). Thus, the key question is at what point *American Pipe* tolling ended.

The United States Supreme Court determined that once the statute of limitations is tolled under *American Pipe*, "it remains tolled for all members of the putative class until class certification is denied." *Crown, Cork & Seal*, 462 U.S. at 354. For cases not involving a denial of class certification, *American Pipe* tolling ends when individuals are "notified that they [a]re no longer parties to the suit and they should have realized that they were obliged to file individual suits or intervene in the class action." *Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 520 (5th Cir. 2008). *See also Choquette v. City of N.Y.*, 839 F. Supp. 2d 692, 699 (S.D.N.Y.

---

accordingly adopted the *American Pipe* rule."); *Albano v. Shea Homes Ltd. P'ship*, 254 P.3d 360, 364 (Ariz. 2011) (en banc); *Am. Tierra Corp. v. City of W. Jordan*, 840 P.2d 757, 762 (Utah 1992); *Lucas v. Pioneer, Inc.*, 256 N.W.2d 167, 180 (Iowa 1977); *Maestas v. Sofamor Danek Grp., Inc.*, No. 02A01-9804-CV-00099, 1999 WL 74212, at *5 (Tenn. Ct. App. Feb. 16, 1999); *Lee v. Grand Rapids Bd. of Educ.*, 384 N.W.2d 165, 168 (Mich. Ct. App. 1986). Even for those states that have not explicitly adopted *American Pipe*, the Eighth Circuit has held that "the federal interest in 'the efficiency and economy of the class-action procedure' outweighs any state interest and therefore justifies tolling in diversity cases where the otherwise-applicable state law provides no relief." *In re Gen. Am. Life Ins. Co. Sales Practices Litig.*, 391 F.3d at 915 (quoting *Adams Pub. Sch. Dist. v. Asbestos Corp., Ltd.*, 7 F.3d 717, 718-19 (8th Cir. 1993)).

2012) ("[C]lass members are treated as parties to the class action 'until and unless they received notice thereof and chose not to continue.") (quoting *In re Worldcom Sec. Litig.*, 496 F.3d 245, 255 (2d Cir. 2007) (internal quotation marks omitted); *Apsley v. Boeing Co.*, No. 05-1368, 2013 WL 6440229, at *2 (D. Kan. Dec. 9, 2013) ("The filing limitations period recommences once it is no longer reasonable for plaintiffs to rely on the class to protect their rights."); *Ganousis v. E.I. du Pont de Nemours & Co.*, 803 F. Supp. 149, 155 (N.D. Ill. 1992) ("[T]he limitations clock stops ticking for the individual when the defendant is put on notice by the filing of the class action, and then it resumes ticking when the prospective plaintiff is put on notice of noncoverage in the class action."). Therefore, the appropriate inquiry is determining when the Indirect Purchaser Plaintiffs in the present case sufficiently notified that they were no longer parties to *In re Propane I.*

The Fourth Circuit has concluded that sufficient notice occurs "when a plaintiff moves for class certification by asserting an unambiguous definition of his desired class that is more narrow than is arguably dictated by his complaint." *Smith v. Pennington*, 352 F.3d 884, 894 (4th Cir. 2003). The Tenth Circuit in *Sawtell v. E.I. du Pont de Nemours & Co., Inc.*, 22 F.3d 248 (10th Cir. 1994) also determined that when a group of plaintiffs move to certify a class based on a more narrow definition than what was asserted in the complaint, *American Pipe* no longer tolls the statute of limitations. 22 F.3d at 253-54. District courts within the Second and Seventh Circuit similarly agree. *See In re New Oriental Educ. & Tech. Grp. Sec. Litig.*, 293 F.R.D. 483, 487 (S.D.N.Y. 2013) (holding that when a class is redefined "more narrowly than [in] the prior individual complaints, and no longer asserts claims on behalf of a portion of the consolidated class, the statute of limitations is no longer tolled under *American Pipe* for that 'abandoned' subclass"); *Ganousis*, 803 F. Supp. at 155-56 (N.D. Ill. 1992).

20

The first filed complaint in *In re Propane I* defined the class as "[a]ll persons who purchased one or more of Defendants' pre-filled 20-pound capacity Propane Gas Tanks, during the applicable limitations period that contained under 17 pounds of propane." (Case No. 09-00924-CV-W-GAF, Complaint, ¶ 27). This definition could be construed to include the Indirect Purchaser Plaintiff class from this case which is defined as "[a]ll persons who, in the United States, purchased a filled propane exchange tank, and whose tank was provided by [Defendants after December 1, 2009]." (Indirect Purchaser Plaintiffs' CAC ¶ 99). However, on December 8, 2009, the plaintiffs in *In re Propane I* moved for class certification using a more narrow class definition which limited the class of plaintiffs to individuals who purchased the tanks before November 30, 2009. (Case No. 09-02086-MD-W-GAF, Doc. # 37). Thus, according to precedent from the Fourth, Tenth, Second, and Seventh Circuits, *American Pipe* tolling ended at that point.

Indirect Purchaser Plaintiffs urge this Court to ignore this precedent and instead look to *Choquette* a case from the same district and the same judge, Judge Koeltl, as *Oriental Education* but decided one year previously. (Doc. # 148, p. 29). In *Choquette*, the plaintiffs were members of a previous class action involving prisoners who were strip searched and subjected to nonconsensual gynecological examinations. 839 F. Supp. 2d at 694, 698. The class that was ultimately certified and settled included their claims for unlawful strip searching but not for forced gynecological examinations. *Id.* at 694-95. The parties disagreed about when *American Pipe* tolling ended as to the claims of nonconsensual gynecological examinations. *Id.* at 698. The defendants argued that it ended when the parties in the previous action entered into a settlement agreement which failed to mention any class claims for the forced gynecological examinations, while the plaintiffs alleged that the tolling did not end until the settlement

21

agreement was preliminarily or finally approved by the court. *Id.* Judge Koeltl ultimately determined that the proposed settlement agreement did not trigger an end to *American Pipe* tolling. *Id.* at 703.

As an initial matter, this case is more factually similar to *Oriental Education* than it is to *Choquette*. Like in *Oriental Education*, the plaintiffs in *In re Propane I* moved to certify a settlement class using a more narrow definition than was asserted in the individual complaints. (Case No. 09-02086-MD-W-GAF, Doc. # 37). No such motion was mentioned in *Choquette*. *See* 839 F. Supp. 2d 692. Further, in *Choquette*, Judge Koeltl took issue with the fact that the position advocated by the defendants would have allowed "actions by class counsel [to] trigger an end to tolling." *Id.* at 701. Instead, Judge Koeltl believed a decision from a court was needed. *Id.* at 699 ("*American Pipe* tolling continues until a class certification decision of the court excludes the claims of the plaintiff."), 700-01, 703. This Court granted the *In re Propane I* plaintiffs' Motion for Preliminary Approval of Class Settlement and approved certification of the narrowed settlement class on March 11, 2010. (Case No. 09-02086-MD-W-GAF, Doc. # 88). Thus, even if a court order is needed to end *American Pipe* tolling, such an order came from this Court almost two weeks before the beginning of the adjusted limitations period. Accordingly, *American Pipe* tolling does not save the Indirect Purchaser Plaintiffs' claims from being barred by the statute of limitations. Therefore, the Indirect Purchaser Plaintiffs have failed to establish any tolling theory sufficient to prevent their state or federal law antitrust claims from being barred by the statute of limitations.

### 4. Indirect Purchaser Plaintiffs' Injunctive Relief Claim

The Indirect Purchaser Plaintiffs' final remaining claim is a claim for injunctive relief under Section 1 of the Sherman Act. (Indirect Purchaser Plaintiffs' CAC Count I). While some

circuit courts have indicated that the Sherman Act's four year statute of limitations applies to claims for injunctive relief,[9] the Eighth Circuit has analyzed a federal antitrust action for injunctive relief's timeliness under the doctrine of laches. *See Midwestern Mach.*, 392 F.3d at 277. "The doctrine of laches is an equitable defense . . . . For the application of the doctrine of laches to bar a lawsuit, the plaintiff must be guilty of unreasonable and inexcusable delay that has resulted in prejudice to the defendant." *Goodman v. McDonnell Douglas Corp.*, 606 F.2d 800, 804 (8th Cir. 1979). The running of an analogous statute of limitation is "merely one element in the congeries of factors to be considered in determining whether the length of delay was unreasonable and whether the potential for prejudice was great." *Id.* at 805. "A court should focus upon the length of the delay, the reasons therefor, how the delay affected the defendant, and the overall fairness of permitting the assertion of the claim." *Id.* at 806. Further, "[l]aches is considered an affirmative defense, and generally the burden of persuasion on an affirmative defense rests with the defendant." *Id.* (internal citation omitted).

In this case, the analogous statute of limitations has run, which weighs against Plaintiffs. However, the Indirect Purchaser Plaintiffs missed the limitations period by only three months, which weighs in their favor. Additionally, Defendants have made only conclusory allegations that they "will be prejudiced if required to expend further time and resources defending stale claims." (Doc. # 136, p. 16). "Not all prejudice to a defendant will be recognized as supporting a defense of laches." *Goodman*, 606 F.2d at 809 n.17. "There are two kinds of prejudice which might support a defense of laches: (1) the delay has resulted in the loss of the evidence . . .; or (2)

---

[9] For example, the Third Circuit in *Pennsylvania Dental Association v. Med. Service Association of Pennsylvania*, 815 F.2d 270 (3d Cir. 1987) assumed that the statute of limitations applied.

the defendant has changed his position in a way that would not have occurred if the plaintiff had not delayed." *Id.* (quoting *Tobacco Workers Int'l Union Local 317 v. Lorillard Corp.*, 448 F.2d 949, 958 (4th Cir. 1971)) (internal citations omitted)). Defendants' conclusory allegations are insufficient to establish the existence of either of these types of prejudice. Although the Indirect Purchaser Plaintiffs have not alleged any excuses or reasons to defend their delay, this Court does not believe that Defendants have met their burden to establish the existence of laches as an affirmative defense.

## CONCLUSION

Defendants moved to dismiss both the Direct Purchaser Plaintiffs' and the Indirect Purchaser Plaintiffs' Consolidated Class Action Complaints. Against the Indirect Purchaser Plaintiffs, Defendants first argue that their current claims were barred by the release provisions from *In re Propane I*. However, for the release provision to apply to them, the Indirect Purchaser Plaintiffs must have been a part of the class definition in *In re Propane I* and, taking the allegations of the pleadings as true and without further evidence, it cannot be said that the Indirect Purchaser Plaintiffs in this case were parties in *In re Propane I*. Thus, at this point the release provision does not bar their claims.

Next, Defendants argue that Plaintiffs' claims are barred by the statute of limitations. Because of the administrative action, the adjusted limitations period in this case began on March 27, 2010. Neither of Plaintiffs' tolling theories were sufficient to meet the adjusted limitations period. Under the continuing violations theory, Plaintiffs needed to establish the existence of an overt act that occurred within the adjusted limitations period. However, Plaintiffs failed to allege that a sufficient overt act occurred during the limitations period. Further, *American Pipe* tolling is insufficient to save the Direct Purchaser Plaintiffs' CAC because their current claims were not

Case 4:14-cv-00967-GAF   Document 93   Filed 07/02/15   Page 24 of 25

alleged in *In re Propane I*.  *American Pipe* tolling is also insufficient to save the Indirect Purchaser Plaintiffs' state law and federal damages claims because *American Pipe* tolling expired on December 8, 2009 when the plaintiffs in *In re Propane I* moved for class certification using a more narrow class definition that limited the class of plaintiffs to individuals who purchased the tanks before November 30, 2009.  Accordingly, for these reasons and the reasons set forth above, Defendants' Motions to Dismiss the Direct Purchaser Plaintiffs' CAC and the Indirect Purchaser Plaintiffs' Counts II-IV are GRANTED.

However, the Indirect Purchaser Plaintiffs' Count I claim for injunctive relief is governed by the doctrine of laches, not the statute of limitations.  Defendants have failed to meet their burden to establish the affirmative defense of the doctrine of laches against that claim. Accordingly, for these reasons and the reasons set forth above, Defendants' Motion to Dismiss Count I of the Indirect Purchaser Plaintiffs' CAC is DENIED.

**IT IS SO ORDERED.**

/s/ Gary A. Fenner
GARY A. FENNER, JUDGE
United States District Court

DATED:   July 2, 2015