**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | |
|---|---|
| **IN RE PRE-FILLED PROPANE TANK ANTITRUST LITIGATION** | **MDL No. 2567** |
| | **MASTER CASE NO. 14-02567-MD-W-GAF** |
| **INDIRECT PURCHASER ACTIONS** | |

**INDIRECT PURCHASER PLAINTIFFS' SUGGESTIONS IN OPPOSITION
TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS BASED ON
THE TIMELINESS OF THE INDIRECT PURCHASERS' REMAINING STATE LAW
CLAIMS**

# TABLE OF CONTENTS

I.   INTRODUCTION ...................................................................................................1

II.  ARGUMENT ........................................................................................................2

    A.   The Continuing Violation Doctrine and the Court's Role in Determining
         Whether It Applies Under State Law.......................................................................2

    B.   "Relevant State Precedent, Analogous Decisions, [and] Considered Dicta"
         Demonstrate that the States at Issue Would Apply the Continuing Violation
         Doctrine to Render Plaintiffs' Damages Claims Timely. .......................................4

         1.   California, New York, and Maine Courts Have Applied the
              Continuing Violation Doctrine to State Antitrust or Consumer
              Protection Claims...........................................................................................5

         2.   The Antitrust Statutes in North Carolina, Minnesota, New Mexico,
              Nevada, and West Virginia Expressly Provide for Accrual of
              Continuing Violations of Antitrust Law. ......................................................7

         3.   Nevada, Nebraska, New Mexico, and West Virginia Require that
              Their Antitrust Laws Be Construed in Harmony with Federal
              Antitrust Law. ................................................................................................9

         4.   Permissive Harmonization Statutes and Other Relevant Precedent
              Indicate that the Remaining States Would Also Apply the Continuing
              Violation Doctrine to Plaintiffs' Claims. ...................................................11

    C.   Plaintiffs' Maine, Vermont, and Wisconsin Claims Are Timely for the
         Additional Reason that They Relate Back to the Filing of the Original
         Complaint...........................................................................................................16

III. CONCLUSION...................................................................................................18

i

# TABLE OF AUTHORITIES

## Cases

*Ag Acceptance Corp. v. Glinz*, 684 N.W.2d 632 (N.D. 2004) ...................................................... 11

*AKA Distrib. Co. v. Whirlpool Corp.*, 137 F.3d 1083 (8th Cir. 1998) ........................................... 3

*Alakayak v. British Columbia Packers, Ltd.*, 48 P.3d 432 (Alaska 2002) ..................................... 9

*Anderson v. City of Prescott*,
No. 1 CA-CV 13-0458, 2014 WL 4104010 (Ariz. Ct. App. Aug. 14, 2014) .......................... 12

*Anheuser-Busch, Inc. v. Abrams*, 520 N.E.2d 535 (N.Y. 1988) ..................................................... 6

*Aryeh v. Canon Bus. Sols., Inc.*, 292 P.3d 871 (Cal. 2013) .......................................................... 5

*Ashley Cnty., Ark. v. Pfizer, Inc.*, 552 F.3d 659 (8th Cir. 2009) .......................................... 3, 4, 14

*Cobblestone Rd. House, LLC v. Greer*, No. 2 CA-CV 2007-0092,
2008 WL 4152830 (Ariz. Ct. App. Sept. 9, 2008) .................................................................. 12

*Emergency One Inc. v. Waterous Co.*, 23 F. Supp. 2d 959 (E.D. Wis. 1998) ....................... 11, 18

*Engh v. SmithKline Beecham Corp.*, No. CIV. 07-3483 MJD/SRN,
2007 WL 4179361 (D. Minn. Nov. 20, 2007) ........................................................................ 17

*E-Z Roll Off, LLC v. County of Oneida,* 800 N.W.2d 421 (Wis. 2011) ...................................... 18

*Ferrellgas Partners, L.P. v. Morgan-Larson, LLC*,
138 S. Ct. 647 (2018) .............................................................................................................. 3

*Fond Du Lac Bumper Exch., Inc. v. Jui Li Enter. Co.*,
85 F. Supp. 3d 1007 (E.D. Wis. 2015) .................................................................................. 15

*Fuller v. Marx*, 724 F.2d 717 (8th Cir. 1984) ............................................................................. 18

*Futurevision Cable Sys. of Wiggins, Inc. v. Multivision Cable TV Corp.*,
789 F. Supp. 760 (D. Miss. 1992) .......................................................................................... 11

*Garg v. Macomb County Community Mental Health Services*,
696 N.W.2d 646 (Mich. 2005) .............................................................................................. 12

*Global Reinsurance Corp.-U.S. Branch v. Equitas Ltd.*,
867 N.Y.S.2d 16 (N.Y. Sup. Ct. 2008) ................................................................................ 6, 8

*Green Mountain Realty Corp. v. Fifth Estate Tower, LLC*, 13 A.3d 123 (N.H. 2010) ............... 11

Case 4:14-md-02567-GAF   Document 346   Filed 07/15/19   Page 3 of 26

*GSI Tech., Inc. v. Cypress Semiconductor Corp.*, No. 5:11-CV-03613 EJD,
2012 WL 2711040 (N.D. Cal. July 6, 2012) ......................................................... 6, 15

*In re Aggrenox Antitrust Litig.*, 94 F. Supp. 3d 224 (D. Conn. 2015) ......................................... 15

*In re Animation Workers Antitrust Litig.*, 87 F. Supp. 3d 1195 (N.D. Cal. 2015) ......................... 5

*In re Digital Music Antitrust Litig.*, 592 F. Supp. 2d 435 (S.D.N.Y. 2008) ................................ 11

*In re: Dollar Gen. Corp. Motor Oil Mktg. & Sales Practices Litig.*,
No. 16-02709-MD-W-GAF, 2017 WL 3863866 (W.D. Mo. Aug. 3, 2017) ........................... 17

*In re Elec. Books Antitrust Litig.*, No. 11 MD 2293 DLC,
2014 WL 2535112 (S.D.N.Y. June 5, 2014) ...................................................................... 11

*In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517 (D.N.J. 2004) .................................................. 15

*In re Liquid Aluminum Sulfate Antitrust Litig.*, No. CV 16-MD-2687 (JLL),
2017 WL 3131977 (D.N.J. July 20, 2017) .......................................................................... 11

*In re Opana ER Antritrust Litig.*, 162 F. Supp. 3d 704 (N.D. Ill. 2016) ....................................... 15

*In re Pre-Filled Propane Tank Antitrust Litig.*,
860 F.3d 1059 (8th Cir. 2017) ............................................................................... passim

*In re Processed Egg Prod. Antitrust Litig.*, 931 F. Supp. 2d 654 (E.D. Pa. 2013) ......................... 9

*In re Skelaxin (Metaxalone) Antitrust Litig.*, No. 1:12-MD-2343,
2013 WL 2181185 (E.D. Tenn. May 20, 2013) ................................................................... 15

*Kisner v. Broome*, No. 1 CA-CV 16-0502, 2017 WL 6462245 (Ariz. Ct. App. Dec. 19, 2017).. 12

*Klehr v. A.O. Smith* Corporation, 521 U.S. 179 (1997) ......................................................... passim

*Lorenz v. United States*, 24 App. D.C. 337 (D.C. Ct. App. 1904) ................................................ 14

*Mack v. Bristol-Myers Squibb Co.*, 673 So. 2d 100 (Fla. Dist. Ct. App. 1996) ............................ 11

*McKinnon v. Honeywell Int'l, Inc.*, 977 A.2d 420 (Me. 2009) ........................................... 7, 15, 16

*Medicare Rentals, Inc. v. Advanced Servs.*, 460 S.E.2d 361 (N.C. Ct. App. 1995) ...................... 7

*North Dakota Dep't of Labor v. Matrix Properties Corp.*, 770 N.W.2d 290 (N.D. 2009) ........... 13

*Petruzzo v. HealthExtras, Inc.*, No. 5:12-CV-113-FL,
2014 WL 12546371 (E.D.N.C. Sept. 8, 2014) ..................................................................... 8

*Plubell v. Merck & Co.*, 434 F.3d 1070 (8th Cir. 2006) ...................................................... 16, 17

iii

*Prescott v. Morton Int'l, Inc.*, 769 F. Supp. 404 (D. Mass. 1990) ................................................ 15

*Romero v. Philip Morris Inc.*, 242 P.3d 280 (N.M. 2010) ............................................................. 10

*Starr v. Sony BMG Music Entm't*, 592 F.3d 314 (2d Cir. 2010) .................................................. 11

*State ex rel. Leech v. Levi Strauss & Co.*, No. 79-722-III,
    1980 WL 4696 (Tenn. Ch. Sept. 25, 1980) ............................................................................. 11

*State v. Brewer*, 129 S.E.2d 262 (N.C. 1963) ............................................................................... 14

*State v. Guerra,* 24 P.3d 334 (N.M. Ct. App. 2001) .................................................................... 10

*State v. Heritage Realty of Vermont*, 407 A.2d 509 (Vt. 1979) ................................................... 11

*State v. Olson*, 86 N.W.2d 214 (Iowa 1957) ................................................................................ 14

*Taylor Land Grp., L.L.C. v. BP Prod. N. Am., Inc.*, No., 294764,
    2011 WL 2119670 (Mich. Ct. App. May 26, 2011) ................................................................. 12

*Thomas v. Petro-Wash, Inc.*, 429 F. Supp. 808 (M.D.N.C. 1977) ................................................. 8

Statutes

Ariz. Rev. Stat. Ann. § 44-1412 ................................................................................................... 11

Cal. Bus. & Prof. Code § 16750.1 .................................................................................................. 5

D.C. Code Ann. § 28-4515 ............................................................................................................ 11

Iowa Code Ann. § 553.2 ................................................................................................................ 11

Kan. Stat. Ann. § 50-163 ............................................................................................................... 11

Mass. Gen. Laws Ann. ch. 93, § 1 & ch. 93A § 11 ..................................................................... 11

Me. Rev. Stat. Ann. tit. 14, § 752 ................................................................................................. 16

Mich. Comp. Laws Ann. § 445.784(2) ......................................................................................... 11

Minn. Stat. Ann. § 325D.64 ............................................................................................................ 8

N.C. Gen. Stat. Ann. § 75-8 ....................................................................................................... 7, 8

N.H. Rev. Stat. Ann. § 358-A:13 .................................................................................................. 11

N.M. Stat. Ann. § 57-1-12(3) ......................................................................................................... 8

N.M. Stat. Ann. § 57-1-15 .............................................................................................................. 9

N.Y. Gen. Bus. Law § 342-c ................................................................................................. 6

Neb. Rev. Stat. Ann. § 59-829 ............................................................................................ 10

Nev. Rev. Stat. Ann. § 598A.050 ....................................................................................... 10

Nev. Rev. Stat. Ann. § 598A.220(3) ..................................................................................... 8

S.D. Codified Laws § 37-1-22 ............................................................................................ 11

Utah Code Ann. § 76-10-3118 ........................................................................................... 11

Vt. Stat. Ann. tit. 12, § 511 ................................................................................................ 16

W. Va. Code Ann. § 47-18-11 ............................................................................................. 8

W. Va. Code Ann. § 47-18-16 ............................................................................................ 10

Wis. Stat. Ann. § 133.18 .................................................................................................... 16

Rules

Federal Rule of Civil Procedure 15 ................................................................................... 16

Missouri Rule of Civil Procedure 55 ................................................................................. 16

In opposition to Defendants' Motion for Judgment on the Pleadings Based on the Timeliness of the Indirect Purchasers' Remaining State Law Claims (Dkt. 341), Indirect Purchaser Plaintiffs state as follows:

## I. INTRODUCTION

This case has now been pending for over five years and this marks Defendants' fourth motion for judgment on the pleadings. Defendants' latest attempt to forestall discovery fares no better than its previous efforts. In arguing that this Court should not apply the continuing violation doctrine to render Plaintiffs' state law damages claims timely, Defendants commit two principal errors.

*First*, Defendants argue that this Court should decline to apply the continuing violation doctrine under state law unless it has been applied in the same context, *i.e.,* a state antitrust claim. This misunderstands the role of the federal courts in interpreting state law. Where there is an absence of state law on a given topic, federal courts may not simply abdicate their duty to decide cases. Rather, they must examine all relevant precedent and predict how the state's highest court would rule.

*Second*, where a state has applied the continuing violation doctrine to an antitrust claim, Defendants attempt to distinguish it by arguing that, unlike here, the plaintiff in the state case alleged anticompetitive conduct continuing into the limitations period. This ignores the Eighth Circuit's ruling in *Propane En Banc*, which joined the unanimous opinion of other circuit courts in holding that continued sales pursuant to a price-fixing conspiracy are overt acts that restart the limitations period. Defendants cite no case indicating that the states at issue would view overt acts differently under their own antitrust laws.

When these errors are corrected, a review of state precedent and other relevant authority demonstrates that all the states at issue would apply the continuing violation doctrine to

1

Plaintiffs' damages claims. Furthermore, Plaintiffs' Maine, Vermont, and Wisconsin claims are timely even without benefit of the continuing violation doctrine because they "relate back" to the original complaint. The Court should therefore deny Defendants' motion for judgment on the pleadings.

## II.     ARGUMENT

### A.     The Continuing Violation Doctrine and the Court's Role in Determining Whether It Applies Under State Law

The continuing violation doctrine as it is understood in the antitrust context was defined by the United States Supreme Court in *Klehr v. A.O. Smith Corporation*:

> Antitrust law provides that, in the case of a "continuing violation," say, a price-fixing conspiracy that brings about a series of unlawfully high priced sales over a period of years, "each overt act that is part of the violation and that injures the plaintiff," *e.g.,* each sale to the plaintiff, "starts the statutory period running again, regardless of the plaintiff's knowledge of the alleged illegality at much earlier times." But the commission of a separate new overt act generally does not permit the plaintiff to recover for the injury caused by old overt acts outside the limitations period.

521 U.S. 179, 189 (1997).[1] Twenty years later, following an appeal by direct purchasers of propane in these coordinated proceedings, the Eighth Circuit held that *Klehr*'s definition "controls" such that "each sale to the plaintiff in a price-fixing conspiracy" is an "overt act, inflicting new and accumulating injury," which "starts the statutory period running again." *In re Pre-Filled Propane Tank Antitrust Litig.* ("*Propane En Banc*"), 860 F.3d 1059, 1067-68 (8th Cir. 2017). In so holding, the Eighth Circuit rejected the defendants' claim that continued sales of propane were the "unabated inertial consequences" of the 2008 price-fixing agreement, rather

---

[1] Internal quotations and citations omitted, and emphasis added, unless otherwise indicated.

2

than "overt acts continuing the conspiracy." *Id.* at 1070.[2] Indeed, the Court noted that it has "***never*** applied the 'unabated inertial consequences' test to a horizontal price-fixing conspiracy." *Id.* at 1071. The Court further observed that its decision was in accord with the other circuit courts: "Every other circuit to consider this issue applies *Klehr*, holding that each sale in a price-fixing conspiracy is an overt act that restarts the statute of limitations." *Id.* at 1065-66. Following the Eighth Circuit's decision in *Propane En Banc*, the Supreme Court denied certiorari, leaving the Eighth Circuit's opinion undisturbed as the most recent expression of the prevailing federal doctrine, now binding on this Court. *Ferrellgas Partners, L.P. v. Morgan-Larson, LLC*, 138 S. Ct. 647, 199 L. Ed. 2d 530 (2018).

The task now before this Court is to decide whether the continuing violation doctrine also applies to Indirect Purchaser Plaintiffs' state law damages claims. Because this issue is governed by state law, this Court must apply the law as decided by the states' highest courts, and where state supreme courts have not decided the issue, it must "predict" how they would rule, looking to "relevant state precedent, analogous decisions, considered dicta, and any other reliable data." *Ashley Cnty., Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). The question is not just whether a state court or legislature has expressly applied the continuing violation doctrine to state antitrust claims, but whether its application is "foreshadowed" by precedent. *Id.* at 673. Indeed, the Eighth Circuit has often predicted state law in the absence of any relevant state authority. *See, e.g.*, *AKA Distrib. Co. v. Whirlpool Corp.*, 137 F.3d 1083, 1086–87 (8th Cir. 1998) (looking to analogous federal cases to predict how Minnesota would apply the economic

---

[2] Because the Court held that "continued sales at supracompetitive prices are overt acts under the continuing violations theory," it did not find it necessary to address whether the direct purchasers had sufficiently alleged any additional overt acts. *Id.* at 1064 n.2.

loss doctrine). Here, the relevant authorities demonstrate that all the states at issue would apply the continuing violation doctrine of *Klehr* and *Propane En Banc* to Plaintiffs' damages claims.

**B.** **"Relevant State Precedent, Analogous Decisions, [and] Considered Dicta" Demonstrate that the States at Issue Would Apply the Continuing Violation Doctrine to Render Plaintiffs' Damages Claims Timely.**

Defendants' sweeping statements about the supposed lack of relevant state law applying the continuing violation doctrine are incorrect. As an initial matter, states use varying terminology to refer to the doctrine. California refers to it as the theory of continuous accrual; others use the term "continuing wrong." Moreover, state courts mean different things even when they use the same terminology. Some courts interpret "continuing violation" to allow for recovery for *all* injuries even if they occurred outside of the applicable limitations period. And some courts understand the doctrine to apply even where no new acts took place within the limitations period, only the effects of previous acts. Thus, the analysis is not simply a matter of plugging the term "continuing violation" into a research database. Rather, it necessitates a state-by-state and case-by-case review to determine whether "relevant state precedent, analogous decisions, [and] considered dicta," *Ashley Cnty.*, 552 F.3d at 665, indicate that the states at issue either have adopted or would adopt the continuing violation doctrine in a manner similar to that articulated in *Klehr* and *Propane En Banc.*

A thorough review demonstrates that one-third of the states have applied a continuing violation theory analogous to that in *Propane En Banc* to state antitrust or consumer protection claims either through case law or statute. *Infra* Parts II.B.1, 2. In addition, several states have statutes which require them to construe their antitrust laws, including accrual of an antitrust claim, in harmony with federal antitrust law. *Infra* Part II.B.3. While the remaining states have statutes that strongly encourage, but do not mandate, harmonization with federal law, no law or

4

policy in any of these states suggests that they would reject federal guidance concerning the accrual of state price-fixing claims. *Infra* Part II.B.4.

>        1.        **California, New York, and Maine Courts Have Applied the Continuing Violation Doctrine to State Antitrust or Consumer Protection Claims.**

In California, the state's highest court has endorsed the theory of continuous accrual which, just like the continuing violation doctrine, holds that "a cause of action accrues each time a wrongful act occurs, triggering a new limitations period." *Aryeh v. Canon Bus. Sols., Inc.*, 292 P.3d 871, 880 (Cal. 2013). In describing the continuous accrual theory, the California Supreme Court cited with approval *Klehr*, which it characterized as providing for "the availability of the theory of continuous accrual in antitrust suits against private entities," *id.* at 881, thereby acknowledging that the theory of continuous accrual under California law and the continuing violation doctrine under federal antitrust law are one and the same.

While *Aryeh* involved a claim brought under California's Unfair Competition Law, the California Supreme Court's reasoning for applying the theory of continuous accrual to the UCL claim applies equally to Cartwright Act claims. The Court examined the language of the UCL's statute of limitations and, finding that neither that section "nor any other part of the UCL offers a definition of what it means for a UCL claim to accrue," it applied "settled common law accrual rules" (*i.e.,* the continuous accrual theory). *Id.* at 876. The limitations provision in the Cartwright Act uses identical language as the UCL and similarly lacks a definition of accrual. *Compare* Cal. Bus. & Prof. Code § 16750.1 *with* § 17208. Thus, it is clear that the California Supreme Court would also apply common law accrual principles, including the theory of continuous accrual, to Cartwright Act claims.[3]

_____

[3] Reinforcing this conclusion, federal courts in California, which routinely have occasion to interpret California law, have evaluated both federal and state antitrust statutes of limitations using the same continuing violation analysis. *See, e.g., In re Animation Workers Antitrust Litig.*,

In *Global Reinsurance Corp.-U.S. Branch v. Equitas Ltd.*, a New York court applied the continuing violation theory to a claim under the Donnelly Act. 867 N.Y.S.2d 16 (N.Y. Sup. Ct. 2008) (holding that the plaintiff could seek antitrust damages resulting from acts taken within the limitations period to "enforce[] and receive[] benefits from" an anticompetitive arrangement). Defendants point out that the court required an overt act in order to restart the limitations period, Br. at 16-17, but so did *Klehr* and *Propane En. Banc*. Indeed, the court in *Global Reinsurance Corp.* relies on *Klehr* for this very proposition. As the Eighth Circuit has already held, continued sales of propane at supracompetitive prices constitute such an overt act. *Propane En Banc*, 860 F.3d at 1067-68. Defendants defy controlling precedent with their repeated characterization of these sales as "mere effects from an old act." *See* Suggestions in Support of Defendants' Motion for Judgment on the Pleadings ("Br.") at 17. Nor do Defendants point to any case law indicating that the New York courts would view sales of a price-fixed product any differently under New York law, especially in light of the admonition of New York's highest court that the Donnelly Act "should generally be construed in light of Federal precedent and given a different interpretation only where State policy, differences in the statutory language or the legislative history justify such a result." *Anheuser-Busch, Inc. v. Abrams*, 520 N.E.2d 535, 539 (N.Y. 1988).[4]

While Defendants claim that Maine "has declined to apply the continuing violations doctrine to claims brought under Maine antitrust law," Br. at 20, they misunderstand the case. *McKinnon v. Honeywell Int'l, Inc.* was a putative class action alleging that the defendant violated

---

87 F. Supp. 3d 1195, 1212–13 (N.D. Cal. 2015); *GSI Tech., Inc. v. Cypress Semiconductor Corp.*, No. 5:11-CV-03613 EJD, 2012 WL 2711040, at *8 (N.D. Cal. July 6, 2012).

[4] The Donnelly Act also provides for tolling during the period of the FTC's investigation and for one year thereafter, N.Y. Gen. Bus. Law § 342-c, thereby providing yet another basis for the timeliness of the claims of the named plaintiffs residing in New York.

6

Maine's antitrust statute by preventing competition for circular thermostats and, as a result, the plaintiff paid artificially inflated prices for those thermostats. 977 A.2d 420, 422-23 (Me. 2009). The Supreme Judicial Court of Maine declined to adopt the continuing violation doctrine "as a means of tolling the statute of limitations" to "revive" a claim for purchases occurring in 1986, more than six years before the filing of suit. *Id.* at 425. Conversely, the court held that a claim based on a separate purchase in 2001 was timely because it was within six years of the plaintiff's 2004 complaint. *Id.* at 423, 426.[5] Although the court did not explicitly say so, it is clear that the only way that it could have found this claim timely was if it applied the rule that a new claim accrues upon each purchase of a supra-competitively priced product and, as such, all purchases occurring within the limitations period are timely. Thus, *McKinnon* implicitly endorses application of the continuing violation doctrine as it has been applied in *Klehr* and *Propane En Banc* and as Plaintiffs advocate here.[6]

2.     **The Antitrust Statutes in North Carolina, Minnesota, New Mexico, Nevada, and West Virginia Expressly Provide for Accrual of Continuing Violations of Antitrust Law.**

North Carolina's antitrust statute provides that, in the event of a continuing violation of the antitrust laws, "each week that the violation of such provision shall continue shall be a separate offense." N.C. Gen. Stat. Ann. § 75-8. Despite the different phraseology, North Carolina case law demonstrates that Section 75-8 functions like the federal continuing violation doctrine, *i.e.*, "each subsequent violation is a separate offense for the purpose of the statute of limitations." *Medicare Rentals, Inc. v. Advanced Servs.*, 460 S.E.2d 361, 364–65 (N.C. Ct. App. 1995). Nor is

---

[5] The court nevertheless dismissed the claim based on the 2001 purchase on the separate ground that it failed to allege sufficient injury. *Id.* at 422.

[6] As discussed *infra* Part II.C, Plaintiffs' Maine antitrust claim would be timely even if Maine had rejected the continuing violation doctrine as articulated in *Propane En Banc* because the claim relates back to the filing of the original complaint.

Section 75-8 "different from *Propane En Banc*" because its focus is on the "violation," instead of the "injury." Br. at 17 n.6. To the contrary, because a new violation accrues upon each injury, there is no meaningful difference. Consistent with this, courts have "applied [Section 75-8] similarly to the application of" the continuing violation doctrine (referred to in North Carolina as "continuing wrong"). *Petruzzo v. HealthExtras, Inc.*, No. 5:12-CV-113-FL, 2014 WL 12546371, at *15 (E.D.N.C. Sept. 8, 2014) (repeated collection of premiums for worthless policies constituted "continuing wrong" for which the plaintiff could collect damages resulting from injuries within the statute of limitations); *see also Thomas v. Petro-Wash, Inc.*, 429 F. Supp. 808, 812-13 (M.D.N.C. 1977) (sale of gas pursuant to anticompetitive leaseback agreement constituted continuing conspiracy entitling the plaintiff to damages for injuries occurring within the limitations period).[7]

The Minnesota, New Mexico, Nevada, and West Virginia antitrust statutes also explicitly recognize the existence of a continuing antitrust violation. In those four states, "a cause of action for a continuing violation is deemed to arise at any time during the period of the violation." Minn. Stat. Ann. § 325D.64; *accord* N.M. Stat. Ann. § 57-1-12(3); Nev. Rev. Stat. Ann. § 598A.220(3); W. Va. Code Ann. § 47-18-11. While Plaintiffs are aware of no state cases interpreting these statutory provisions, the Supreme Court of Alaska has interpreted a provision in the Alaska antitrust statute with almost identical language. Citing *Zenith Radio v. Hazeltine Research* and *Hanover Shoe v. United Shoe Machinery*, the Supreme Court of Alaska held: "The language in AS 45.50.588, providing that 'a claim for a continuing violation is considered to

---

[7] Like their unsuccessful argument with regard to *Global Reinsurance Corp.-U.S. Branch v. Equitas Ltd*., *supra* Part II.B.1, Defendants try to distinguish *Thomas v. Petro-Wash, Inc.* on the basis of overt acts occurring within the limitations period. Br. at 17-18. Yet again, this is without merit. *Propane En Banc* held that continued sales of propane at supra-competitive prices constitute overt acts. Defendants point to no case law indicating that the North Carolina courts would treat the issue any differently under state antitrust law.

8

accrue at any time during the period of the violation,' . . . [means] that the statute of limitations may begin '*at any time*' while the violation is ongoing." *Alakayak v. British Columbia Packers, Ltd.*, 48 P.3d 432, 461 (Alaska 2002). At least one federal court has interpreted the Minnesota statute in the same manner. *See In re Processed Egg Prod. Antitrust Litig.*, 931 F. Supp. 2d 654, 663–64 (E.D. Pa. 2013) (holding that "Minnesota's antitrust statute permits a suit for a continuing violation [to] take place at any time during which the violation was ongoing").

Having failed to notify the Court of the existence of the Minnesota, New Mexico and Nevada statutes, Defendants argue the West Virginia statute is inapplicable because the "fill level reduction agreement was made and fully performed before the limitations period" and therefore Plaintiffs' claims did not arise "during the period of such violation." Br. at 19. This argument is no more successful now than it was the previous times that Defendants have made it. *See supra* p. 5 & n. 7. What continued into the limitations period are sales of propane, which the Eighth Circuit has held to be overt acts in furtherance of the price-fixing conspiracy. Defendants point to no case law indicating that the West Virginia courts would view these allegations of continued sales any differently under West Virginia law.

### 3. Nevada, Nebraska, New Mexico, and West Virginia Require that Their Antitrust Laws Be Construed in Harmony with Federal Antitrust Law.

Several states require that their antitrust laws be construed in harmony with federal antitrust law. For instance, New Mexico's Antitrust Act states: "Unless otherwise provided in the Antitrust Act, the Antitrust Act *shall* be construed in harmony with judicial interpretations of the federal antitrust laws. This construction *shall* be made to achieve *uniform* application of the state and federal laws prohibiting restraints of trade and monopolistic practices." N.M. Stat. Ann. § 57-1-15. The Supreme Court of New Mexico has interpreted this to mean that it is "the duty of the courts to ensure that New Mexico antitrust law does not deviate substantially from federal

9

interpretations of antitrust law." *Romero v. Philip Morris Inc.*, 242 P.3d 280, 291 (N.M. 2010) (quoting *State v. Guerra,* 24 P.3d 334 (N.M. Ct. App. 2001) ("The word 'shall' as used in a statute is generally construed to be mandatory.")). Nebraska, Nevada, and West Virginia have similar provisions in their antitrust statutes. Neb. Rev. Stat. Ann. § 59-829 ("[T]he courts . . . ***shall*** follow the construction given to the federal law by the federal courts."); Nev. Rev. Stat. Ann. § 598A.050 ("The provisions of this chapter ***shall*** be construed in harmony with prevailing judicial interpretations of the federal antitrust statutes."); W. Va. Code Ann. § 47-18-16 ("This article ***shall*** be construed liberally and in harmony with ruling judicial interpretations of comparable federal antitrust statutes.").

Defendants attempt to get out from under the mandate of these and other harmonization provisions by claiming that they are inapplicable because the issue here is not one of substantive antitrust law, but rather who can sue under the law. Br at 21. This is incorrect. The question presented here is not a matter of standing, such as whether indirect purchasers may sue. Rather, it involves when an antitrust claim accrues which, for purposes of the continuing violation doctrine, involves what type of act it is—namely, an overt act inflicting new injury, or the unabated inertial consequences of an earlier act. This is most certainly a matter of substantive antitrust law. And as the Eighth Circuit has noted: "Every other circuit to consider this issue applies *Klehr*, holding that each sale in a price-fixing conspiracy is an overt act that restarts the statute of limitations." *Propane En Banc*, 860 F.3d at 1065-66. The harmonization statutes in Nevada, Nebraska, New Mexico and West Virginia require those courts to follow the unanimous opinion of the federal circuit courts and apply the continuing violation doctrine to the horizontal price-fixing conspiracy alleged here.

10

4. **Permissive Harmonization Statutes and Other Relevant Precedent Indicate that the Remaining States Would Also Apply the Continuing Violation Doctrine to Plaintiffs' Claims.**

The remaining states have statutes or equivalent case law in which the guidance of the federal courts applying federal antitrust or consumer protection law is considered highly persuasive. *E.g.,* Mich. Comp. Laws Ann. § 445.784(2) ("It is the intent of the legislature that in construing all sections of this act, the courts shall give due deference to interpretations given by the federal courts to comparable antitrust statutes. . . .").[8] As discussed *supra* Part II.B.3, the core issue here is not one of standing, but rather one of substantive antitrust law, *i.e.,* what constitutes an overt act in furtherance of a price-fixing conspiracy. These harmonization provisions should therefore be applied absent any contradictory state law or policy, and Defendants identify no such law or policy.

Contrary to Defendants' claims, Michigan, Arizona, and North Dakota have not "rejected the continuing violation doctrine regardless of context." Br. at 8. In *Garg v. Macomb County*

---

[8] Ariz. Rev. Stat. Ann. § 44-1412; D.C. Code Ann. § 28-4515; Iowa Code Ann. § 553.2; Kan. Stat. Ann. § 50-163; Mass. Gen. Laws Ann. ch. 93, § 1 & ch. 93A § 11; *Futurevision Cable Sys. of Wiggins, Inc. v. Multivision Cable TV Corp.*, 789 F. Supp. 760, 780 (D. Miss. 1992); N.H. Rev. Stat. Ann. § 358-A:13; *Green Mountain Realty Corp. v. Fifth Estate Tower, LLC*, 13 A.3d 123, 127 (N.H. 2010); S.D. Codified Laws § 37-1-22; *State ex rel. Leech v. Levi Strauss & Co.*, No. 79-722-III, 1980 WL 4696, at *2 n.2 (Tenn. Ch. Sept. 25, 1980); Utah Code Ann. § 76-10-3118; *Emergency One Inc. v. Waterous Co.*, 23 F. Supp. 2d 959, 962, 970 (E.D. Wis. 1998). *See also In re Digital Music Antitrust Litig.*, 592 F. Supp. 2d 435, 448 (S.D.N.Y. 2008) (Vermont "look[s] to federal antitrust decisions to construe [its] own antitrust statute[]") (citing *State v. Heritage Realty of Vermont*, 407 A.2d 509, 511–12 (Vt. 1979)), *vacated and remanded on other grounds sub. nom. Starr v. Sony BMG Music Entm't*, 592 F.3d 314 (2d Cir. 2010); *In re Elec. Books Antitrust Litig.*, No. 11 MD 2293 DLC, 2014 WL 2535112, at *15 (S.D.N.Y. June 5, 2014) ("The language of NDUSAA parallels Section 1 of the Sherman Act and North Dakota courts look to federal antitrust law in interpreting the NDUSSA.") (citing *Ag Acceptance Corp. v. Glinz*, 684 N.W.2d 632, 639 (N.D. 2004)); *In re Liquid Aluminum Sulfate Antitrust Litig.*, No. CV 16-MD-2687 (JLL), 2017 WL 3131977, at *23 (D.N.J. July 20, 2017) ("When analyzing whether a claim may lie under the Florida Deceptive and Unfair Trade Practices Act, Courts are guided by federal antitrust laws.") (citing *inter alia Mack v. Bristol-Myers Squibb Co.*, 673 So. 2d 100, 104 (Fla. Dist. Ct. App. 1996)).

11

*Community Mental Health Services*, the Michigan Supreme Court rejected a continuing violation theory that would have allowed the plaintiff to "recover for injuries *outside* the limitations period." 696 N.W.2d 646, 658 (Mich. 2005). This is the same version of continuing violation theory that was rejected by the Supreme Judicial Court of Maine. *See supra* Part II.B.1. By contrast, the continuing violation doctrine as articulated in *Klehr* and *Propane En Banc* allows recovery only for injuries occurring *within* the limitations period. 860 F.3d at 1068. Defendants cite no Michigan precedent disapproving of this version of the continuing violation doctrine. Indeed, as the Michigan Court of Appeals has made clear, Michigan continues to recognize an exception to the statute of limitations where, as here, there are continuing wrongful acts (as opposed to the continuing effects of a past act). *Taylor Land Grp., L.L.C. v. BP Prod. N. Am., Inc.*, No. 294764, 2011 WL 2119670, at *12-13 (Mich. Ct. App. May 26, 2011).

Arizona courts also recognize the continuing violation doctrine. In *Kisner v. Broome*, the Arizona Court of Appeals applied the "continuing wrong doctrine" to a breach of fiduciary duty claim based on "defendants' implementation and continued approval and repeated application of an ongoing scheme of excessive payments" to shareholders other the plaintiffs. No. 1 CA-CV 16-0502, 2017 WL 6462245, at *7-8 (Ariz. Ct. App. Dec. 19, 2017). Like *Klehr* and *Propane En Banc*, the court held that the plaintiffs could only recover for the excessive payments occurring within the limitations period. *Id.* Moreover, in the cases cited by Defendants, the Arizona Court of Appeals acknowledged that the continuing violation doctrine was a viable theory in Arizona even though it held it was not applicable on the specific facts before it. *See Anderson v. City of Prescott*, No. 1 CA-CV 13-0458, 2014 WL 4104010, at *4 (Ariz. Ct. App. Aug. 14, 2014) (recognizing that the continuing violation theory can be applied in Title VIII cases or those alleging constitutional violations); *Cobblestone Rd. House, LLC v. Greer*, No. 2 CA-CV 2007-

12

0092, 2008 WL 4152830, at \*3-4 (Ariz. Ct. App. Sept. 9, 2008) (noting that breach of covenant cases are "susceptible" to a continuing breach theory).

Defendants' characterization of North Dakota law is similarly inaccurate. In *State ex rel. N. Dakota Dep't of Labor v. Matrix Properties Corp.,* the North Dakota Supreme Court held that the "failure to design and construct [housing] is a single instance of unlawful conduct," not a continuing course of unlawful conduct to which the continuing violation doctrine would apply. 770 N.W.2d 290, 295-96 (N.D. 2009). Defendants extrapolate from this case that North Dakota would never apply the continuing violation doctrine in any context, Br. at 9, but the case actually supports application of the continuing violation doctrine here. In the absence of any North Dakota case interpreting the limitations period for a state housing discrimination claim, the North Dakota Supreme Court "construed the state statute of limitations in the same manner as the only federal circuit court of appeals to address the question has interpreted the [analogous] federal statute of limitations." *Id.* at 297. Given that the North Dakota Supreme Court considers the reasoning of the federal courts "persuasive," *id.* at 296, in the context of a state housing discrimination claim alleging a continuing violation, there is no reason to conclude it would not also follow the guidance of the federal courts when considering a state antitrust claim alleging a continuing violation.

With regard to the remaining state claims, Defendants argue that this Court should decline to apply the continuing violation doctrine because those states have not applied the doctrine specifically to antitrust claims. Br. at 9-13. This reasoning runs counter to the mandate of the Eighth Circuit, which instructs that when state law is "underdeveloped," federal courts sitting in diversity should not avoid deciding the issue, but instead must look to analogous decisions [and] considered dicta," among other sources, to predict how states would decide the

13

issue. *Ashley Cnty.*, 552 F.3d at 665. Federal circuits uniformly hold that each sale in a price-fixing conspiracy restarts the statute of limitations. *Propane En Banc*, 860 F.3d at 1065. These holdings reflect the traditional common law doctrine that a conspiracy claim is not barred by the statute of limitations if acts pursuant to the conspiracy took place within the limitations period.[9] Thus, "analogous decisions [and] considered dicta" support application of the continuing violation doctrine here.

Defendants' argument also fails to take account of the state harmonization provisions. *Supra* n. 7. The plain language of these provisions instructs that each state's antitrust laws should be read in harmony with federal antitrust law absent any contradictory state law or policy. As discussed above, Defendants identify no state that has rejected application of the continuing violation doctrine as articulated in *Klehr* and *Propane En Banc* to private state antitrust claims. Rather than read a non-existent exception into the law, the safer approach is to assume state courts would heed the plain language of the harmonization provisions and apply the continuing violation doctrine in a manner consistent with the federal approach. Defendants point to *Illinois Brick* as an example of states not conforming to federal antitrust law, Br. at 21-22, but that only proves the point: the fact that so many states have enacted *Illinois Brick* repealer statutes

---

[9] *See e.g., State v. Brewer*, 129 S.E.2d 262, 270 (N.C. 1963) ("[C]onspiracy is a continuing offense so that the Stat[ut]e of Limitations is tolled as to the original conspiracy each time an overt act is committed in furtherance" of the conspiracy.); *State v. Olson*, 86 N.W.2d 214, 224 (Iowa 1957) ("[T]he statute of limitations does not commence to run so long as a conspiracy continues to exist by the commission of overt acts in furtherance of it."); *Lorenz v. United States*, 24 App. D.C. 337, 388 (D.C. Ct. App. 1904) (statute of limitations runs from each overt act in a conspiracy).

14

demonstrates that, absent the repeal, *Illinois Brick*'s antitrust standing rule would apply to states' laws under their respective harmonization provisions.[10]

Consistent with Plaintiffs' approach, numerous federal courts across the country have applied the continuing violation doctrine to state antitrust or consumer protection claims. *See, e.g., Fond Du Lac Bumper Exch., Inc. v. Jui Li Enter. Co.*, 85 F. Supp. 3d 1007, 1011 (E.D. Wis. 2015) (price-fixing claims under Arizona, Arkansas, North Carolina, and Tennessee law); *In re Aggrenox Antitrust Litig.*, 94 F. Supp. 3d 224, 248 (D. Conn. 2015) (state antitrust and consumer protection claims "under the law of nearly every state"); *In re Skelaxin (Metaxalone) Antitrust Litig.*, No. 1:12-MD-2343, 2013 WL 2181185, at *32 (E.D. Tenn. May 20, 2013) (antitrust and consumer protections claims under California, Florida, Michigan, Minnesota, Nebraska, New York, North Carolina, Arkansas, and Nebraska law); *GSI Tech., Inc.*, 2012 WL 2711040, at *8 (antitrust claim under California law); *In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 551 (D.N.J. 2004) (claims under 22 state antitrust or unfair competition statutes); *Prescott v. Morton Int'l, Inc.*, 769 F. Supp. 404, 408–09 (D. Mass. 1990) (consumer protection claim under Massachusetts law). By contrast, Defendants identify only one federal court that has refused to apply the continuing violation doctrine to state antitrust claims. Citing the Supreme Judicial Court of Maine's decision in *McKinnon v. Honeywell Int'l, Inc.*, the Northern District of Illinois declined to apply the continuing violation doctrine to Kansas and Mississippi antitrust claims due to its supposed "mixed treatment by state courts deciding state antitrust claims." *In re Opana ER Antritrust Litig.*, 162 F. Supp. 3d 704, 725 (N.D. Ill. 2016). That decision, however, was based

---

[10] Defendants also argue that "applying *Propane En Banc* to hold the IPP's state claims timely would amount to a [] circumvention of *Illinois Brick*." Br. at 22. But each state law under which Plaintiffs bring suit has already decided to circumvent *Illinois Brick* by allowing indirect purchasers to sue. Indeed, circumvention of *Illinois Brick* is the intent of the states at issue, and Defendants' argument in this regard only lends further support to application of the continuing violation doctrine here.

on a misunderstanding of *McKinnon*, which actually supports application of the continuing violation doctrine here. *Supra* Part II.B.1.

In sum, the overwhelming weight of authority, both federal and state, supports application of the continuing violation doctrine to render Plaintiffs' state law damages claims timely.

**C.    Plaintiffs' Maine, Vermont, and Wisconsin Claims Are Timely for the Additional Reason that They Relate Back to the Filing of the Original Complaint.**

Plaintiffs' Maine, Vermont, and Wisconsin claims each have a six-year statute of limitations. 14 M.R.S.A. § 752; 12 V.S.A. § 511; Wis. Stat. Ann. § 133.18. Thus, they are timely even without benefit of the continuing violation doctrine. Defendants contend, however, that these claims do not relate back to the filing of the original *Ortiz* complaint on May 30, 2014. Br. at 19-20. Controlling Eighth Circuit precedent demonstrates otherwise.

Under Federal Rule 15(c), "an amendment relates back if the defendant knew or should have known that it would be called on to defend against claims asserted by the newly-added plaintiff, unless the defendant would be unfairly prejudiced in maintaining a defense against the newly-added plaintiff." *Plubell v. Merck & Co.*, 434 F.3d 1070, 1072 (8th Cir. 2006). In *Plubell*, the original named plaintiff lacked standing to bring suit because she had not used the pain medication alleged to have been deceptively developed and marketed; Plaintiffs sought leave to add a named plaintiff who had used the drug. *Id.* at 1071. The Eighth Circuit rejected the defendant's contention that "relation back" rules do not apply where the initial named plaintiff in a class action does not have the legal right to sue. *Id.* at 1074. Applying Rule 15,[11] the Appeals Court held that the claims in the amended pleading arose from the "same conduct, transaction, or

---

[11] Although the case was nominally decided under Missouri Rule 55.33(c), the Eighth Circuit applied Federal Rule 15(c) on the ground that the state rule was meant to embody the rationale and objectives of the federal rule. *Id.* at 1072.

16

occurrence" because "[b]oth the original and the amended pleadings set forth exactly the same conduct by Merck; the only difference is the class representative." *Id.* at 1073. The Court also held that the defendant was in no way prejudiced by the amendment because the allegations in the amended pleading were "identical" and furthermore, "although Mary Plubell is only a putative member of the original class, which has not yet been certified, Merck still knew or should have known that it must defend against Plubell's claims. Plubell is only 'newly-added' in that she became the named class representative." *Id.* Therefore, the addition of the new class representative with standing related back to the original pleading. *Id.* at 1074; *see also, e.g., In re: Dollar Gen. Corp. Motor Oil Mktg. & Sales Practices Litig.*, No. 16-02709-MD-W-GAF, 2017 WL 3863866, at *26 (W.D. Mo. Aug. 3, 2017) (Fenner, J.) (applying *Plubell* and holding that claims of members of putative class who were newly added as class representatives related back to the filing of the original complaint)*; Engh v. SmithKline Beecham Corp.*, No. CIV. 07-3483 MJD/SRN, 2007 WL 4179361, at *8 (D. Minn. Nov. 20, 2007) ("It appears that Plaintiffs have done nothing more than move an absent class member into the role of a named class representative. There were no changes to the Plaintiffs' allegations or causes of action; no new claims were added. [Thus] *Plubell* is controlling.").

Here, as in *Plubell*, the allegations and claims in the First Amended Complaint (FAC) are nearly identical to those in the initial pleading. Contrary to Defendants' characterizations, Plaintiffs' Maine, Vermont, and Wisconsin claims were not "first asserted" in the FAC. Br. at 19. The claims were alleged in the original complaint. Dkt. 1, ¶¶ 148, 161, 163. The only new allegations in the FAC were the addition of new class representatives who purchased or exchanged propane tanks in Maine, Wisconsin, or Vermont (the "Six-Year SoL Class Representatives"). Dkt. 198, ¶¶ 110-112, 119-20, 123-24. Like in *Plubell*, the Six-Year SoL

Class Representatives had always been members of the putative class; they were only newly added in the sense that they became class representatives. Defendants cannot possibly claim prejudice from this amendment. *Cf. Fuller v. Marx*, 724 F.2d 717, 720–21 (8th Cir. 1984) (no relation back for entirely new theory of recovery). Therefore, the addition of the Six-Year SoL Class Representatives relates back to the initial complaint and the Maine, Vermont, and Wisconsin claims are timely.[12]

### III. CONCLUSION

For the foregoing reasons, Indirect Purchaser Plaintiffs respectfully request that the Court deny Defendants' fourth motion for judgment on the pleadings.

---

[12] Nor would Wisconsin reject application of continuing violation doctrine here, as Defendants contend. Br. at 20. In *E-Z Roll Off, LLC v. County of Oneida*, the Wisconsin Supreme Court declined to apply the continuing violation doctrine to Wisconsin's notice of claim statute, which requires parties to serve a notice of claim on certain governmental entities prior to filing suit. 800 N.W.2d 421, 433–34 (Wis. 2011). The Court held that applying the continuing violation doctrine would undermine the purpose of the notice of claim statute by making it "much more difficult to budget for litigation." *Id.* at 434. Here, there is no such policy rationale for declining to apply the continuing violation doctrine because Plaintiffs are not suing any governmental entities. In an antitrust suit such as this involving private parties, Defendants provide no reason why the Wisconsin courts would not abide by their own precedent, which holds that "federal court decisions construing the Sherman Act control application of Wisconsin antitrust law…." *Emergency One, Inc.*, 23 F. Supp. 2d at 970.

18

Dated:  July 15, 2019                    Respectfully submitted,

By:  */s/ Barrett J. Vahle*

Norman E. Siegel, MO #44378
Barrett J. Vahle, MO #56674
C. Curtis Shank, MO #66221
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, Missouri  64112
Telephone:  (816) 714-7100
Facsimile:  (816) 714-7101
Email:  siegel@stuevesiegel.com
vahle@stuevesiegel.com

Robert B. Carey
Leonard W. Aragon
John M. DeStefano
**HAGENS BERMAN SOBOL SHAPIRO LLP**
11 West Jefferson Street, Suite 1000
Phoenix, Arizona  85003
Telephone: (602) 840-5900
Facsimile: (602) 840-3012
Email:   rob@hbsslaw.com
leonard@hbsslaw.com
johnd@hbsslaw.com

Stuart M. Paynter
Jennifer L. Murray
**THE PAYNTER LAW FIRM PLLC**
1200 G Street N.W., Suite 800
Washington, DC  20005
Telephone: (202) 626-4487
Facsimile: (866)734-0622
Email: stuart@paynterlaw.com
jmurray@paynterlaw.com

*Lead Counsel for Indirect Purchaser Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on July 15, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically send a notice of electronic filing to counsel of record.

*/s/ Barrett J. Vahle*
Barrett J. Vahle