# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| IN RE: PRE-FILLED PROPANE TANK ANTITRUST LITIGATION | ) MDL NO. 2567 )<br>) Master Case No. 14-02567-MD-W-GAF )<br>) ORDER GRANTING DIRECT |
| **This Document Relates To:**<br>**Direct Purchaser Actions** | ) PURCHASER PLAINTIFFS' MOTION FOR<br>) FINAL APPROVAL OF CLASS ACTION<br>) SETTLEMENTS WITH FERRELLGAS<br>) AND AMERIGAS |

WHEREAS direct purchaser plaintiffs Morgan Larson LLC, Johnson Auto Electric, Inc., Speed Stop 32, Inc., and Yocum Oil Company, Inc. ("Plaintiffs"), on behalf of themselves and of the proposed settlement class ("Settlement Class"), and each of (i) defendants Ferrellgas, L.P. and Ferrellgas Partners, L.P., also doing business as Blue Rhino (collectively, "Ferrellgas") and (ii) defendants AmeriGas Partners, L.P., AmeriGas Propane L.P., AmeriGas Propane, Inc., and UGI Corporation (collectively, "AmeriGas"), have separately agreed, subject to Court approval following Notice to the Settlement Class and a hearing, to settle the above-captioned matter ("Lawsuit") upon the terms set forth in the Ferrellgas Settlement Agreement and AmeriGas Settlement Agreement (collectively, "Settlement Agreements");

WHEREAS, on November 11, 2019, this Court preliminarily approved the Settlement Agreements as fair, reasonable, and adequate and thus authorized and directed Notice in a reasonable manner to all Settlement Class Members who would be bound by the Settlement Agreements if finally approved by this Court. *See* ECF # 364.

WHEREAS, upon receiving the court-approved Notice informing them of the Settlement Agreements, the Plan of Allocation, and their respective rights and obligations regarding the operation and effect of the Settlement Agreements, including the rights to object to and/or exclude themselves from the Settlement Agreements, only two of the 50,485 Settlement Class Members requested exclusion from the Settlement agreements and no Settlement Class Members objected in any way to the Settlement Agreements or the Plan of Allocation;

WHEREAS, this Court has reviewed and considered the Settlement Agreements entered into among the parties, together with all exhibits and addenda thereto, the record in this case, and the briefs and arguments of counsel;

{11050/0001: 00434489.DOCX.}
Case 4:14-md-02567-GAF   Document 439   Filed 06/18/20   Page 2 of 14

WHEREAS, Plaintiffs have moved for an order granting final approval of the Settlement Agreements, certifying the proposed Settlement Class, and entering final judgment;

WHEREAS, on June 17, 2020, this Court held a hearing regarding the Settlement Agreements and Plaintiffs' motion for final approval of the Settlement Agreements;

WHEREAS, this Court finds that the Settlement Agreements are fair, reasonable, and adequate after considering whether "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . . ; and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2).

WHEREAS, this Court finds, for purposes of settlement only, that the action meets all prerequisites of Rule 23 of the Federal Rules of Civil Procedures;

NOW, THEREFORE, IT IS HEREBY ORDERED:

1. Unless otherwise defined herein, all terms that are capitalized herein shall have the same meaning ascribed to those terms in the Settlement Agreements.

2. The Court has jurisdiction over this Action (and all actions and proceedings consolidated in the Action), Plaintiffs, Settlement Class Members, Ferrellgas, AmeriGas, and any party to any agreement that is part of or related to the Settlement Agreements.

3. Under Federal Rule of Civil Procedure 23(e)(2), a court may finally approve a settlement binding class members "only after a hearing and only on a finding that it is fair, reasonable, and adequate after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . . ; and (D) the proposal treats class members equitably relative to each other."

4. The requirement that a class action settlement be "fair, reasonable, and adequate" is nothing new, as "each circuit has developed its own vocabulary for expressing these concerns." Fed. R. Civ. P. 23, advisory committee's note to 2018 amendment. In the Eighth Circuit, courts have long described the inquiry as focusing on four factors, to be considered in the trial court's sound discretion: "the merits of the plaintiff's case, weighed against the terms of the settlement; the defendant's financial condition; the complexity and expense of further litigation; and the amount of opposition to the settlement." *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988). "A strong public policy favors agreements, and courts should approach them with a presumption in their favor." *Little Rock Sch. Dist. v. Pulaski Cty. Special Sch. Dist. No. 1*, 921 F.2d 1371, 1388 (8th Cir. 1990).

5. Here, all relevant factors weigh in favor of finally approving the Settlement Agreements and entering final judgment as to the direct purchaser actions. First, the Settlement Agreements are fair, reasonable, and adequate because they were entered into by named plaintiffs and class counsel that have adequately represented the settlement class. Second, the Settlement Agreements are the result of arm's-length negotiations among experience counsel, following extensive motions practice, appeals, and discovery on both sides. Third, the total agreed-upon consideration of $12,562,500 is more than adequate when considering the Rule 23(e) factors, including the substantial costs, risks, and delay of proceeding to trial and appeal; Ferrellgas's uncertain financial condition and ability to satisfy a treble damages judgment in the future; that settlement funds will be distributed automatically, with no need for a claim form, to all Settlement Class Members; and that award of attorneys' fees and expenses to Settlement Class Counsel and service fees to Named Plaintiffs was subject to further review and approval of the Court and was found to be reasonable. In particular, the statute of limitations has been a hotly contested issue in

this case. This Court initially dismissed Plaintiffs' consolidated amended class action complaint on statute of limitations grounds, and an Eighth Circuit panel agreed and affirmed that dismissal. Although an *en banc* Eighth Circuit granted rehearing, reversed the dismissal, and held that plaintiffs had sufficiently alleged a continuing antitrust conspiracy, Defendants continue to pursue that defense, and that statute of limitations issue undoubtedly injects uncertainty into the ultimate outcome of this case. Fourth, the proposed Plan of Allocation treats Settlement Class Members equitably relative to each other and is fair and adequate because it distributes the settlement funds according to each Settlement Class Member's injury and *pro rata* share of total purchases of all Filled Propane Exchange Tanks, and the award of service fees to named Plaintiffs was subject to further review and approval of this Court. Fifth, the lack of class member opposition to the Settlement Agreements or the Plan of Allocation (or to the fee award to Class Counsel or service award to Named Plaintiffs) similarly demonstrates that the Settlement Agreements are fair, reasonable, and adequate and "weighs in favor of approving the settlement." *See, e.g.*, *Keil v. Lopez*, 862 F.3d 685, 698 (8th Cir. 2017) (collecting cases approving settlements as fair, reasonable, and adequate even though "almost half the class objected"). Despite receiving reasonable notice of and the opportunity to object to the Settlement Agreements, none of the 50,485 Settlement Class Members objected in any way to either the Settlement Agreements or the Plan of Allocation, which independently supports final approval of the Settlement Agreements. *See, e.g.*, *Kautsch v. Premier Commc'ns*, No. 06-CV-04035-NKL, 2008 WL 11426766, at *3 (W.D. Mo. Nov. 20, 2008) (holding that "the amount of opposition to the settlement, demonstrates that the settlement and subsequent assignment were fair, reasonable, and adequate" because "Class members were given the opportunity to object to the assignment," and "No class members objected"). Further, only two Settlement Class Members requested to be excluded from the

Settlement Agreements, which also reflects the fairness, reasonableness, and adequacy of the Settlement Agreements and supports final approval.

6. The Court further finds that the Plan of Allocation is fair, reasonable, and adequate, and is hereby finally approved.

7. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Court certifies, for purposes of effectuating these Settlements and for purposes of judgment on the proposals, a Settlement Class as follows:

> All entities in the United States who purchased for resale Filled Propane Exchange Tanks directly from Ferrellgas or AmeriGas, or paid to exchange a previously purchased Filled Propane Exchange Tank directly with Ferrellgas or AmeriGas, between July 21, 2008 and January 9, 2015.

8. The record plainly supports certification of and final approval of the Settlement Class. Rule 23 requires a two-step process to certify a class. First, under Rule 23(a), the proposed class must satisfy the "requirements of numerosity, commonality, typicality, and fair and adequate representation." *Luiken v. Domino's Pizza, LLC*, 705 F.3d 370, 372 (8th Cir. 2013).[1] Second, the proposed class must satisfy at least one of the provisions of Rule 23(b). *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). A class may be maintained under Rule 23(b)(3) if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Each of these requirements is addressed below.

9. The Settlement Class is comprised of 50,485 retailers who purchased or exchanged

---

[1] Although "[a] separate threshold ascertainability requirement is not the law in this circuit," *In re Dollar Gen. Corp. Motor Oil Mktg. & Sales Practices Litig.*, No. 16-02709-MD-W-GAF, 2019 WL 1418292, at *12 (W.D. Mo. Mar. 21, 2019), the proposed Settlement Class is also ascertainable: the class is defined objectively to include any entity that purchased Filled Propane Exchange Tanks for resale, directly from one or more of the defendants, during a defined time period. Indeed, all Settlement Class Members are readily identifiable from defendants' sales records.

Filled Propane Exchange Tanks directly from Ferrellgas or AmeriGas for resale during the Settlement Class Period. This number of class members easily satisfies the numerosity requirement. *See, e.g.*, *Arkansas Ed. Ass'n v. Bd. of Ed. of Portland, Ark. Sch. Dist.*, 446 F.2d 763, 765-66 (8th Cir. 1971).

10. The Settlement Class also satisfies Rule 23(a)(2)'s commonality requirement. Plaintiffs' claims present myriad questions of law and fact common to the Settlement Class. Each Settlement Class Member alleges the same injury—paying inflated prices for Filled Propane Exchange Tanks—from the same unlawful conduct: defendants' conspiracy to eliminate competition and raise prices to supracompetitive levels through agreements to reduce the amount of propane they would put in their tanks and to allocate customers and markets between themselves. "Where an antitrust conspiracy has been alleged, courts have consistently held that 'the very nature of a conspiracy antitrust action compels a finding that common questions of law and fact exist.'" *In re High-Tech Employee Antitrust Litig.*, 985 F. Supp. 2d 1167, 1180 (N.D. Cal. 2013). "[F]or purposes of Rule 23(a)(2) even a single common question will do." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) (brackets and quotations omitted). Exemplary common questions of fact and law include whether defendants entered into an illegal agreement to reduce fill levels and allocate customers and markets; whether defendants artificially inflated the prices of Filled Propane Exchange Tanks; and whether Settlement Class Members were injured by that conduct and, if so, the appropriate measure of aggregate damages. In addition, defendants' statute of limitations defense also presents common questions of law and fact as to all members of the Settlement Class.

11. Rule 23(a)(3)'s typicality requirement also is satisfied by the Settlement Class because named Plaintiffs and all Settlement Class Members allege the same injuries arising from

common conduct: paying supracompetitive prices due to defendants' illegal agreement to reduce fill levels and allocate customers and markets. Typicality just "means that there are 'other members of the class who have the same or similar grievances as the plaintiff.'" *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996). It is "fairly easily met," and "[f]actual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." *Postawko v. Mo. Dep't of Corr.*, 910 F.3d 1030, 1039 (8th Cir. 2018). "Thus, typicality in the antitrust context will be established by plaintiffs and all class members alleging the same antitrust violations by the defendants," and as such, "claims in antitrust price-fixing cases generally satisfy Rule 23(a)(3)'s typically requirement, even if members purchase different quantities and pay different prices." *In re Playmobil Antitrust Litig.*, 35 F. Supp. 2d 231, 241 (E.D.N.Y. 1998).

12. The court further finds, under Rule 23(a)(4), that Plaintiffs will fairly and adequately represent the interests of the Settlement Class. "The focus of Rule 23(a)(4) is whether: (1) the class representatives have common interests with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel." *Paxton*, 688 F.2d at 562–63. Plaintiffs allege they suffered the same injuries as the rest of the Settlement Class, and together they share an interest in proving defendants' conduct violated antitrust laws and artificially inflated the prices they paid for Filled Propane Exchange Tanks. Plaintiffs do not have any conflicts of interest with the Settlement Class Members and have demonstrated a willingness to vigorously prosecute the interests of the Settlement Class—by agreeing to be named plaintiffs and participating in discovery. Further, Settlement Class Counsel are accomplished litigators with ample experience in complex antitrust class actions like this one.

13. In order to certify a Rule 23(b)(3) class, the Court must further find "that the

questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). However, the predominance requirement is relaxed in the settlement context: "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, . . . for the proposal is that there be no trial." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). In this Circuit, "[c]ertification is appropriate if the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Stuart v. State Farm Fire & Cas. Co.*, 910 F.3d 371, 374–75 (8th Cir. 2018) (quotation and citation omitted). The test is not whether any individual issues exist, but is simply whether one or more of the central issues in the case is common to the class; indeed, "[a] class may be certified based on common issues 'even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'" *Id.* (citation omitted).

14. The Court finds that the predominance inquiry is satisfied here with respect to the proposed Settlement Class because the central issues underlying the Settlement Class Members' claims relate to defendants' conduct, and do not vary from class member to class member or require any individualized proof for purposes of these Settlements. Plaintiffs allege that defendants conspired to inflate the prices of Filled Propane Exchange Tanks across the country by agreeing to reduce the amount of propane they included in those tanks, and by agreeing to allocate customers and markets between themselves to eliminate competition and maintain supracompetitive prices. Plaintiffs allege that defendants' illegal scheme had a common impact on all Settlement Class Members by artificially inflating the prices that all direct purchasers paid for Filled Propane Exchange Tanks.

15. The Court further finds that proceeding here via the class action mechanism is superior to other available methods in light of the common claims and issues that predominate among the Settlement Class Members, as described above. *Accord* Wright, Miller & Kane, Federal Practice and Procedure: Civil Procedure § 1781, at 254–55 (3d ed. 2004) ("[I]f common questions are found to predominate in an antitrust action, . . . courts generally have ruled that the superiority prerequisite of Rule 23(b)(3) is satisfied."). Without a class action approach, a significant number of individual lawsuits could be filed, and "[s]eparate proceedings would produce duplicate efforts, unnecessarily increase the costs of litigation, impose an unwarranted burden on this Court and other courts throughout the country, and create the risk of inconsistent results for similarly situated parties." *In re Potash Antitrust Litig.*, 159 F.R.D. 682, 699 (D. Minn. 1995). Moreover, "the cost associated with individual claims may require claimants with potentially small claim amounts to abandon otherwise valid claims simply because pursuing those claims would not be economical. This in turn would result in unjustly enriching the Defendants; precisely the result antitrust laws are designed to remedy." *Id.*

16. Accordingly, based on the findings herein, and the documents and pleading submitted in this case, the Court finally approves the Settlement Agreements under Rule 23(e)(2) and certifies the Settlement Class for purposes of judgment on the proposals.

17. The Court further finds that the previously approved and directed Notice and Plan of Dissemination met the strictures of Rule 23 and due process of law, and was the best notice practicable under the circumstances. During the preliminary approval process, the Court appointed the firm of JND Legal Administration ("JND") to act as Claims Administrator, and in turn authorized JND to direct Notice of the Settlement Agreements to the Settlement Class Members. *See* ECF # 364. On November 14, 2019, JND established a settlement-specific website,

www.propanedirectpurchaser.com. The Settlement Website hosts copies of important case documents, including the Long-Form Notice, Preliminary Approval Order, the Settlement Agreements, and Motion for Award of Attorneys' Fees, Costs and Service Awards; provides answers to frequently asked questions, and provides Settlement Class Members with mail and e-mail contact information. On February 14, 2020, JND likewise established a settlement-specific dedicated toll-free phone number, 1-888-304-0198, and fax number, 1-206-788-8766, for Settlement Class Members to call for additional information or to fax documentation. On February 14, 2020, JND caused the court-approved Notice to be mailed by first-class regular mail to 38,878 Settlement Class Members. When certain Notices were returned to JND as undeliverable, JND undertook reasonable efforts to obtain updated address information for such Settlement Class Members and then promptly caused the Notice to be re-mailed to any updated addresses that were located. The Notice informed Settlement Class Members that anyone who wanted to object to or be excluded from the Settlements could so by submitting a written request to JND postmarked on or before March 30, 2020. JND did not receive any objections in response to the February 14, 2020 Notice and received only one exclusion request in response to the February 14, 2020 Notice. On April 20, 2020, JND caused the court-approved Supplemental Notice to be mailed by first-class regular mail to 11,607 additional Settlement Class Members (as well as to 30 Settlement Class Members from the initial Notice mailing for whom a new address was obtained through skip-tracing). The Supplemental Notice informed Settlement Class Members that anyone who wanted to object to or be excluded from the Settlements could do so by submitting a written statement to JND postmarked on or before June 5, 2020. JND did not receive any objections in response to the April 20, 2020 Supplemental Notice and received only one exclusion request in response to the April 20, 2020 Supplemental Notice.

18. In short, court-appointed claims administrator JND provided actual notice where possible to each Settlement Class Member. As explained above, the Notice was sent by first-class regular mail directly to all 50,485 Settlement Class Members. Where Notice was returned as undeliverable to certain Settlement Class Members, JND made reasonable attempts to obtain updated addresses for all such Settlement Class Members and to provide additional direct notice to such Settlement Class Members. JND also established a settlement-specific website, toll free telephone number, and fax number through which Settlement Class Members could obtain information about the action, the Settlement Agreements, the Plan of Allocation, and their rights with respect to the Settlement Agreements.

19. All Settlement Class Members who did not properly and timely request exclusion from the Settlement Class shall, upon entry of the Final Approval Order and Judgment, be bound by all the terms and provisions of the Settlement Agreements, including the release provisions, whether or not such Settlement Class Member objected to the Settlements and whether or not such Settlement Class Member received consideration under the Settlement Agreements.

20. Any Settlement Class Member who did not timely mail an objection in writing in accordance with the procedure set forth in the Notice shall be deemed to have waived any objection to (a) the Settlement Agreements; (b) entry of a Final Approval Order and Judgment; (c) Class Counsel's application for payment of costs and anticipated request for fees; and (d) service award requests for the named Plaintiffs, whether by appeal, collateral attack, or otherwise.

21. Upon entry of this Final Approval Order and Judgment, all Settlement Class Members who have not personally and timely requested to be excluded from the Settlement Class will be enjoined from proceeding against Ferrellgas, AmeriGas, and all other released parties as defined in the Settlement Agreements, with respect to all of the released claims as defined in the

Settlement Agreements.

22. On March 31, 2020, the Court awarded Settlement Class Counsel a 33% fee award as fair and reasonable compensation for their work in obtaining the substantial relief for the Settlement Class Members (*see* ECF # 390), and in accordance with longstanding Eighth Circuit precedent. *See, e.g.*, *Huyer v. Buckley*, 849 F.3d 395, 399 (8th Cir. 2017) (collecting cases showing that Eighth Circuit courts "have frequently awarded attorney fees between twenty-five and thirty-six percent of a common fund in other class actions"). Out of an abundance of caution, and because ECF # 390 was entered before all Settlement Class Members had received notice and an opportunity to object to the requested attorneys' fees, expenses, and service awards, the Court hereby reaffirms its Order awarding attorneys' fees, litigation expenses, and service awards, *see* ECF # 390, including for the reasons requested in Plaintiffs' Motion for Attorneys' Fees, Litigation Expenses, and Service Awards (ECF # 384). Settlement Class Counsel Berger Montague PC, Cohen Milstein Sellers & Toll, PLLC, Susman Godfrey L.L.P., and Shaffer Lombardo Shurin, P.C. are awarded a fee of $4,145,625 from the Settlement Fund; Settlement Class Counsel are awarded $132,549.83 from the Settlement Fund as reimbursement for their litigation costs and expenses; and named Plaintiffs Morgan Larson LLC, Johnson Auto Electric, Inc., Speed Stop 32, Inc., and Yocum Oil Company, Inc. are each awarded a $15,000 service award from the Settlement Fund. *See* ECF # 390.

23. The Court also reaffirms its holding during the preliminary approval process that all costs incurred in disseminating Notice and administering the Settlements shall be paid from the Settlement Fund pursuant to the Settlement Agreements. As explained in the Supplemental Declaration of Jennifer M. Keough Regarding Notice Mailing and Administration of Settlement (*see* ECF # 429), claims administrator JND has incurred $88,256.39 in administration fees and

costs in disseminating the Notice and administering the Settlements to date. The Court finds these administration fees and costs reasonable and necessarily incurred in order to effectuate the Settlement Agreements and provide relief to the Settlement Class, and thus approves and orders payment of $88,256.39 from the Settlement Fund to JND as reimbursement for the administration fees and costs incurred to date. To the extent JND reasonably and necessarily incurs additional such fees and costs in administering the Settlement Agreements following this final approval Order, Plaintiffs are directed to move this Court for reimbursement of any such fees and costs if and when they are incurred and documented by JND.

24. Neither this Order nor the Settlement Agreements, nor any other Settlement-related document nor anything contained or contemplated therein, nor any proceedings undertaken in accordance with the terms set forth in the Settlement Agreements or herein or in any other Settlement-related document, shall constitute, be construed as or be deemed to be evidence of or an admission or concession by Ferrellgas or AmeriGas as to (a) the validity of any claim that has been or could have been asserted against either or as to any liability by either as to any matter encompassed by the Settlement Agreements or (b) the propriety of certifying any litigation class against Ferrellgas or AmeriGas.

25. Neither the Settlement Agreements, nor any of their terms or provisions, nor any of the negotiations or proceedings connected with them, shall be construed as an admission or concession by Plaintiffs or Defendants, respectively, of the truth or falsity of any of the allegations in the Lawsuit, or of any liability, fault or wrongdoing of any kind.

**IT IS SO ORDERED.**

s/ Gary A. Fenner
GARY A. FENNER, JUDGE
UNITED STATES DISTRICT COURT

DATED: June 18, 2020